Alameda County Public Defender

Oakland Branch Office
545 - 4th Street
Oakland, CA 94607-3533
(510) 268-7400



Brendon D. Woods
Public Defender
Youseef Elias
Chief   Assistant   Public
Defender

April 24, 2018

Via ECF/CMF
Honorable Magistrate Judge Corley
United States District Court Northern District of California
Courtroom F, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: Ortega-Rangel v. Sessions, Case No. 18-cv-01618 - Supplemental Briefing

On April 17, 2018, the Honorable Judge Corley heard arguments on Petitioner's Petition for Writ of Habeas Corpus, originally filed with this Court on March 14, 2018. As agreed upon by the Court and the parties, Petitioner now submits her Supplemental Brief addressing the following two issues:

(1) Whether Petitioner Has Asserted a Constitutional Claim Over Which This Court Has Habeas Jurisdiction.

(2) Whether Petitioner Has Asserted a Legal Claim Over Which This Court Has Habeas Jurisdiction.

Through this supplemental letter, Petitioner seeks to address the questions raised by this Court at her April 17 hearing. Petitioner asks that the Court grant the instant Habeas Petition and either order Petitioner's release or order Respondents to immediately provide Petitioner with a bond hearing that comports with due process.

### This Court's Habeas Jurisdiction Is Not Barred By 8 U.S.C. § 1226(e):

The Court raised the question of whether 8 USC 1226(e) divests it from habeas jurisdiction. However, the U.S. Supreme Court has held that "where a provision precluding review is claimed to bar habeas review, the [Supreme] Court has required a particularly clear statement that such is Congress' intent." *Demore v. Kim,* 538 U.S. 510, 517 (2003). The government contends that 8 USC 1226(e) restricts habeas review of the Attorney General's "discretionary judgment" on detention matters. But the Supreme

1

Court has rejected this very argument: "Section 1226(e) contains no explicit provision barring habeas review[.]" *Demore,* 538 at 517.

Furthermore, the Ninth Circuit has made it clear that section 1226(e) "does not limit habeas jurisdiction over constitutional claims or claims of law." *Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011).  This includes "jurisdiction over questions of law, including application of law to undisputed facts." *Id.* (internal citations omitted).

Petitioner asserts both constitutional and legal violations. Petitioner claims that her bond hearing became fundamentally unfair when the IJ relied on mere allegations arising from pending criminal charges as *sole* evidence of not only dangerousness, but a level of dangerousness that could warrant the extreme position of denying bond in a civil custody case altogether.  Petitioner also claims that as a matter of law, she met her legal burden of establishing that she did not constitute either a danger to the community or flight risk and that the Immigration Judge erred as a matter of law in ignoring key facts in his custody decision.

***Petitioner's Constitutional Claim:***

While an Immigration Judge (IJ) is afforded broad discretion to determine whether an individual is a flight risk or a danger to the community in a bond hearing, the IJ's exercise of discretion is not without its important constitutional limitations. A judge's discretionary powers do not give him or her the ability to conduct a bond proceeding that falls below the standards of fairness that Due Process requires. The bond hearing that the Immigration Judge conducted for Petitioner, Maria Ortega-Rangel, fell below those standards and violated Petitioner's constitutional right to due process.

The U.S. Court of Appeals for the Ninth Circuit has held that although the Attorney General's discretionary judgement is not subject to review, "claims that the discretionary process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241." *Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011).

In 2011, the Ninth Circuit affirmed the principle that even where detention is permissible, "due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Singh v. Holder,* 638 F.3d 1196, 1203 (9th Cir. 2011) (internal citations omitted).

**Courts Have Repeatedly Undertaken Review Of Bond Decisions By IJs To Determine Whether Those Decisions Are Legal and Constitutional.**

In *Ramos v. Sessions,* the Northern District Court of California held that "a district court has jurisdiction to review an IJ's discretionary bond denial where that bond denial is

challenged as legally erroneous or unconstitutional." *Ramos v. Sessions,* 2018 WL
905922 at *2 (N.D. Cal. February 15, 2018) (hereinafter "*Ramos I*").  In *Ramos I,* the
Court noted that the IJ declined to release petitioner on any amount of bond because
petitioner had been convicted of two prior DUI convictions, had failed initial efforts
towards rehabilitation, and had stated at her hearing that she would pursue all available
relief if ordered removed which made her a flight risk. *Ramos* at *4.  The District Court
stated that while the IJ *noted* petitioner's efforts toward rehabilitation, the IJ nevertheless
"appeared to rely largely on Liborio Ramos's convictions instead of her changed, post-
conviction circumstances." *Id.* The District Court then went on to note that another Court
in the District had similarly "granted habeas relief after an IJ denied bond for an
immigrant with significantly more severe criminal history and significantly fewer ties to
the United States." *Ramos I* at 5 (citing *Sales v. Johnson,* 2017 WL 6855827 (N.D. Cal.
September 20, 2017).

The Court in *Ramos I* concluded that "the Government did not show by clear and
convincing evidence that Liborio Ramos was a danger to the community or a flight risk
such that no amount of bond, or alternative supervision, could secure her release." *Id.* The
Court went on to conclude that the "IJ did not appear to consider alternatives to detention
such as residential treatment or alcohol monitoring." *Id.*

In *Ramos I,* the petitioner asked the District Court to find that the bond hearing
provided to petitioner <u>did not comport with due process</u>. The Court assumed jurisdiction
over the case, grappled with the details of how the Judge came to her conclusion to deny
bond altogether, and ultimately found that the petitioner did not receive due process in her
bond hearing.  Petitioner, Maria Ortega-Rangel, asks this Court to do the same here.

On February 15, 2018, the District Court ordered Government to release petitioner
Ramos unless she was provided with a bond hearing that comported with due process
within 15 days of the order. *Id.*

In its subsequent decision*,* the District Court noted that in response to its February
15 order, the Immigration Court held a new bond hearing for petitioner Ramos and issued
a second decision denying petitioner bond altogether. *Ramos v. Sessions,* 2018 WL
1317276 at *1-2 (N.D. Cal. March 13, 2018) (hereinafter "*Ramos II*"). In *Ramos II,* the
Court again undertook review of the bond hearing that took place before the Immigration
Judge, in order to determine whether such a hearing comported with due process. In
explaining the standard of review that it would be applying, the District Court noted that
"a reviewing court might ask whether the IJ meaningfully engaged with the record in
making her findings, or instead ignored crucial evidence." *Id.* at *7.

The District Court squarely identified the issues in *Ramos II* as including the
question of "whether the IJ legally erred in concluding that the Government had shown
that Librorio Ramos poses a danger to the community." *Id.* at 8. Similarly, here, Ms.
Ortega-Rangel asks the Court to determine whether the IJ legally erred in concluding that

the Petitioner had failed to meet her burden of establishing that she was not a danger to the community.

In *Ramos II,* the District Court assumed jurisdiction to "make an independent examination of the record to determine whether the pretrial detention order is consistent with the defendant's constitutional and statutory rights and arrive at [its own] conclusion *de novo*." *Ramos II* at 10 (citing *United States v. Townsend*, 897 F.2d 989, 994 (9ᵗʰ Cir. 1990). The District Court then found that "these facts in the aggregate do not meet the Government's burden of demonstrating by clear and convincing evidence that Liborio Ramos poses a danger to the community." *Id. See also Castaneda v. Aitken,* 2015 WL 3882755 (N.D. Cal. June 23, 2015) (in which District Court assumed habeas jurisdiction to review and consider the evidence presented at petitioner's bond hearing before the IJ in determining whether petitioner received an adequate bond hearing.)

Just as the District Court in *Ramos II* had jurisdiction to determine whether the Government had met its burden of proving dangerousness by clear and convincing evidence, so does this Court have jurisdiction to determine whether Petitioner met her burden of showing that she did not constitute a danger to the community.

In *Obregon,* the Northern California District Court assumed jurisdiction over a habeas petition claiming that the IJ's finding of dangerousness and denial of bond violated petitioner's right to due process and was an error of law. *Obregon v. Sessions,* 2017 WL 1407889 (N.D. Cal. April 20, 2017). In that case, the burden was on the government to prove dangerousness by clear and convincing evidence. *Id.* at 4. Petitioner in *Obregon* had suffered three DUI citations/arrests, four driving with a license convictions, and at least one probation violation for failing to attend DUI classes. *Id.* at *2. In that case, the District Court Judge concluded that it was "not clear that the IJ considered all the evidence in assessing petitioner's present dangerousness." *Id.* at 7. In *Obregon,* the District Court Judge held that: "It violates due process to keep someone in immigration detention for more than a year on the basis of dangerousness where the overriding reason is that a non-violent crime was committed as a result of that person's addiction and the individual has a viable plan for rehabilitation and compliance with pertinent conditions of release." *Id.* at 8.

Similarly, in *Barrientos v. ICE Field Office Director,* the Ninth Circuit held that the District Court "properly concluded that Barrientos' detention comports with applicable legal and constitutional requirements" after it reviewed the IJ's consideration of specific evidence in support of a denial of bond. *Barrientos v. ICE Field Office Director,* 667 Fed.Appx. 184 (Western District of Washington, June 21, 2016).

The government relies on *Barrientos,* a one page decision from the Ninth Circuit, for the proposition that allegations from pending charges can be relied on for a finding of dangerousness. However, *Barrientos* supports Petitioner's arguments. First, it supports Petitioner's argument that the District Court does have jurisdiction to consider the evidence before the IJ in determining whether a bond hearing was legally and

4

constitutionally adequate.

Additionally, a close look at the facts in *Barrientos* supports Petitioner's contention that the IJ erred when he found Petitioner to constitute a danger to the community. First, at the time of petitioner's bond hearing in that case, he had already had his asylum claim denied by the IJ and his appeal dismissed by the BIA. Report and Recommendation of Magistrate Judge Donohue. *Barrientos v. ICE Field Office Director,* 2015 WL 6554522 at *1 (September 28, 2015) (the Magistrate Judge's Report and Recommendation was adopted by District Court Judge Robert S. Lasnick. *Barrientos v. ICE Field Office Director,* 2015 WL 6554535 (October 29, 2015)). Secondly, also at the time of the bond hearing, Mr. Barrientos's criminal history included a disorderly conduct citation, a conviction for failing to carry a license, and an arrest involving a DUI, a hit and run, and sexual abuse of a 17 year old female. *Id.* at *2. Finally, in *Barrientos,* petitioner had admitted to certain criminal conduct despite not having been convicted of that conduct and it was that admission, in addition to his history of arrests and convictions, that was used to find that he was a danger and a flight risk, and to justify his denial of bond. *Id.* at *2-3. Given those facts, the Ninth Circuit held that the District Court had not erred in finding that petitioner's denial of bond did not constitute a legal or constitutional error.

Here, Petitioner has never been ordered removed by an IJ or by the BIA, has suffered no criminal convictions in over 18 years in the U.S., has only one arrest for charges that remain pending, and made no admissions to any criminal conduct at her bond hearing. Additionally she submitted proof to the IJ that the Superior Court of California found her suitable for release on her own recognizance in the very criminal case that was used against her at her bond hearing.

This Court has jurisdiction to review what took place at Petitioner's bond hearing in order to determine whether it was constitutionally adequate. District Courts have repeatedly reviewed discretionary bond decisions for legal and constitutional errors.

**The IJ's Reliance on Pending Criminal Charges As Sole Evidence of Dangerousness Violated Petitioner's Right to Due Process.**

Petitioner submitted significant documentation that she was not a danger to the community. She submitted letters of support, sworn declarations, offered witness testimony, submitted a finding by a Superior Court that she was suitable for release on her own recognizance, and so forth.[1] Despite this weighty evidence, the IJ relied solely on pending criminal charges – notably charges for alleged *non-violent* conduct – to find that Petitioner had had not met her burden to show that she is not a danger to the community. Just as prior Courts have found that an IJ's weighing of evidence can violate due process,

---

1 Notably, the IJ did not make a finding as to flight risk in his written decision, but stated during the bond proceedings that he did not find Petitioner to be flight risk. ECF Document 2 at 10.

this Court is empowered to make that same finding here where the IJ relied on unproven allegations as the sole evidence of dangerousness. *See Ramos I, supra* (holding that the "bond proceedings denied Liborio Ramos her right to due process").

The IJ's sole reliance on pending charges that have not resulted in any finding of guilt, let alone any conviction, made Petitioner's bond hearing fundamentally unfair and violated Petitioner's right to due process. In fact, the IJ relied *solely* on charges that no Court has yet found probable cause to support since Petitioner has not been able to return to Court in order proceed with any preliminary hearing in her case.

## A Discretionary Process That Allows An IJ To Continue Petitioner's Detention Based Solely on Charges That She Has Not Had An Opportunity To Challenge Violates Due Process.

This Court has jurisdiction over claims that a discretionary process itself was constitutionally flawed. The IJ's finding of dangerousness subjected Petitioner to detention without the possibility of bond, such that she has been unable to return to criminal court in order to challenge the very allegations justifying her detention. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge,* 424 U.S. 319 (1976). However, due process "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge,* 424 US at 334 (internal citations omitted); *see also Wynar v. Douglas Cnty. School Dist.,* 728 F.3d 1062, 1073 (9th Cir.2013). A discretionary process that denies an individual a meaningful opportunity to challenge those charges violates Petitioner's constitutional right to due process. Due process requires that Petitioner be given an opportunity to litigate her criminal case, pursuant to the Superior Court's order of release on her own recognizance, if the charges arising out of that criminal case are going to be used against her; and especially if they constitute the *sole* evidence used by an immigration court to find that she is a danger to the community.

## *Petitioner's Legal Claims:*

## The IJ's Determination Of Present Dangerousness Was An Error Of Law.

The IJ committed legal error when he found that Petitioner had not met her burden of establishing that she was not a danger to the community, and in so doing, found her to be a danger such that her request for release on bond could be denied altogether.

In *Sales,* the District Court found that the IJ's reasons for denying bond were primarily that petitioner owned no assets or property in the U.S., had been ordered removed by both the IJ and BIA, had no incentive to report for removal because of family ties, and desired to remain in the U.S. *Sales v. Johnson,* 2017 WL 6855827 (N.D. Cal. September 20, 2017). The Court then held that "[a]s a matter of law, these reasons did not meet the clear and convincing standard." *Id.* at *5. The *Sales* Court reaffirmed that it only

6

had habeas jurisdiction over constitutional claims or questions of law. *Id.* In *Sales,* petitioner had been served 16 years in prison for second degree murder and was taken into immigration custody immediately after being found suitable for release on parole. *Id.* at \*1. The Northern District Court in *Sales* found that the IJ's "brief and conclusory treatment of the evidence that Petitioner is a flight risk at the June 23, 2017 hearing does not actually, or correctly, apply the clear and convincing standard." *Id.* at \*6.

Here, Ms. Ortega-Rangel is asking the Court to make a similar finding that the IJ's failure to meaningfully consider several key facts that supported her burden of proving that she was not a danger to the community, as well as the IJ's reliance on mere allegations pending against Ms. Ortega-Rangel as sole evidence of dangerousness, was an error of law over which this Court has jurisdiction.

The Court in *Sales* relied in part on a Southern District of California decision in which the Court "held that the evidence before the IJ failed, as a matter of law, to prove flight risk or danger pursuant to the Court's earlier order for a bail hearing." *Id.* (*citing Judulang v. Chertoff,* 562 F. Supp. 2d 1119 (S.D. Cal. 2008)). The petitioner in *Judulang* had an "extensive" criminal history including a voluntary manslaughter conviction, a DUI conviction, and a grand theft conviction. *Id.* at 1126.

In *Judulang,* the U.S. District Court for the Southern District of California held that "[w]here Petitioner's only relevant conviction for violence is nearly 20 years old and no other evidence indicating dangerousness was put forward, the IJ's finding of present dangerousness was an error of law and the denial of bond was inappropriate." *Judulang* at 1127. The Court held that since the "evidence before the IJ failed, as a matter of law, to provide flight risk or danger pursuant to the Court's order," that under the facts of that case, petitioner's continued detention was "not authorized by statute." *Id.*

Here, Petitioner was found dangerous despite having suffered not a *single* criminal conviction in the United States. She does not have a history of convictions, or a history of arrests. She has a single arrest for charges that no judge has yet found that probable cause exists to support. Petitioner has not had any preliminary hearing, nor been able to return to Court in order to challenge the charges against her in any way.

Similarly, in yet another District Court decision from the Southern District of California, the Chief Judge of the District Court assumed jurisdiction over petitioner's habeas claim. In that case, petitioner had one conviction for driving under the influence, and a second one for driving under the influence with bodily injury. *Mau v. Chertoff,* 562 F.Supp.2d 1107 (C.D. Cal. 2008). In *Mau,* the District Court held that "[u]nder the circumstances, the IJ's reliance on two misdemeanor convictions for DUI and one felony conviction for DUI as the basis for the finding of present dangerousness was an error of law and the resulting assessment of $100,00[0] bond was unreasonable." *Id.* at 1118.

The Ninth Circuit has held that "not all criminal convictions conclusively establish

7

that an alien presents a danger to the community, even where the crimes are serious enough to render the alien removable." *Singh*, 638 F.3d at 1206. Here, Petitioner did not have a single criminal conviction. She had been charged with possessing drugs for sale, as well as child endangerment, the latter appearing to stem only from the fact that a child lived in a home where drugs were found.  As a matter of law, Petitioner met her burden of showing that she was not a danger to the community, and the IJ erred as a matter of law in finding otherwise.

The IJ's discretionary power over whether or not to release an individual on bond does not include the power to apply discretion in a way that is unaccountable to an articulable standard that comports with due process's requirements of fundamental fairness and procedural adequacy.  For example, an IJ cannot, where there is *zero* evidence of dangerousness, find that an individual has not met their burden of showing that they are not a danger to the community. And although such a decision constitutes a discretionary decision, neither the law nor the Constitution contemplate prohibiting review of arbitrary decision-making pursuant to which an IJ can deprive an individual of his liberty, simply because that decision-making is pursuant to a discretionary power.

Just as a District Court would surely have jurisdiction to review such clearly erroneous decision-making by an IJ, so too does the Court have jurisdiction to review the erroneous decision-making in the instant case, where the IJ relied on pending charges *alone* to find Petitioner to be a danger to the community.

**IJ Erred As A Matter Of Law When He Ignored Key Evidence in Deciding That Petitioner Was a Danger to the Community.**

The Ninth Circuit has held that "[w]here there is any indication that the BIA did not consider all of the evidence before it, a catchall phrase does not suffice, and the decision cannot stand. Such indications include misstating the record and failing to mention highly probative or potentially dispositive evidence." *Cole v. Holder,* 659 F.3d 762 (7710772 (9th Cir. 2011).

In the instant case, the Government argues that the IJ meaningfully considered all evidence because he referenced "reviewing and weighing all of the evidence presented in the bond proceedings." ECF Document 1-2 at 14.  However, such a reference is not sufficient to show that the IJ meaningfully considered all evidence. In fact, the IJ failed to mention highly probative evidence in his decision, including evidence that Petitioner had been released on her own recognizance by the Superior Court of California. Pursuant to *Cole v. Holder,* this establishes that the IJ failed to consider all of the evidence before him.

Moreover, the agency must consider all favorable and unfavorable factors relevant to the exercise of its discretion; failure to do so constitutes an abuse of discretion. *See An Na Peng v. Holder,* 673 F.3d 1248, 1253 (9th Cir.2012) (the BIA abuses its discretion when it fails to consider all relevant factors bearing on the balance of equities or an

application for relief); *Xiao Fei Zheng v. Holder,* 644 F.3d 829, 833 (9th Cir. 2011) (same); *cf. United States v. $11,500.00 in U.S. Currency,* 710 F.3d 1006, 1011 (9th Cir.2013) (a district court abuses its discretion if it fails to consider factors relevant to the exercise its discretion); *Karapetyan v. Mukasey,* 543 F.3d 1118, 1121 (9th Cir.2008) (reviewing IJ/BIA decision for abuse of discretion). If the procedures used by ICE do not assure that the decision-makers obtain the requisite information before the decision is made, then it is unlikely that the decision made will be a proper one under the abuse of discretion standard. *Villa-Anguiano v. Holder*, 727 F.3d 873, 881 (9th Cir. 2013).

Petitioner argued in her Habeas Petition that the IJ ignored key pieces of evidence in his final decision, including proof of the Superior Court's finding that Petitioner was neither a danger nor a flight risk.

Finally, this Court stated repeatedly at Petitioner's April 17, 2018 Habeas hearing that the IJ had abused his discretion in finding Petitioner to constitute a danger to the community. An abuse of discretion is an error of law over which this Court has jurisdiction. The U.S. Supreme Court has held that "[t]he abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Koon v. U.S.,* 518 U.S. 81, 100 (1996). That Court found that a district court "by definition abuses its discretion when it makes an error of law." *Id.* Put another way, a "court abuses its discretion by erroneously interpreting a law." *United States v. Beltran-Guttierez,* 19 F.3d 1287, 1289 (9th Cir. 1994). This Court has already provided that the IJ abused his discretion in finding that Petitioner was a danger to the community. A finding of dangerousness requires an application of the law to facts, and therefore an erroneous finding of dangerousness would appear to constitute an error of law.

Petitioner asserts that she met her burden as a matter of law to show that she was not a danger to the community or a flight risk. As such, she has raised a legal claim over which this Court has jurisdiction.

Submitted on this 24th day of April 2018:

ALAMEDA COUNTY PUBLIC DEFENDER

/s/ Raha Jorjani

_____

Raha Jorjani
Attorney for Petitioner

# Attachment A

2018 WL 905922
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

Floricel Liborio RAMOS, Plaintiff,
v.
Jefferson B. SESSIONS, et al., Defendants.

Case No. 18-cv-00413-JST
|
Signed 02/15/2018

**Attorneys and Law Firms**

Jehan Marie Laner, Pangea Legal Services, San Francisco, CA, for Plaintiff.

Robin Michael Wall, United States Attorney's Office, San Francisco, CA, for Defendants.

**ORDER GRANTING IN PART
PETITION FOR HABEAS CORPUS**

Re: ECF Nos. 1, 6

JON S. TIGAR, United States District Judge

**\*1** Before the Court is Petitioner Floricel Liborio Ramos's motion for a temporary restraining order and petition for a writ of habeas corpus. ECF Nos. 1, 6. Liborio Ramos is currently in detention while she awaits the conclusion of removal proceedings and the adjudication of her claim for withholding of removal. Liborio Ramos asks the Court to order her release before March 14, 2018, because the immigration judge ("IJ") who conducted her immigration detention hearing did not require the government to meet its burden of showing by clear and convincing evidence that she was either a danger to the community or a flight risk before refusing to release her on bond. ECF No. 7 at 6.

For the reasons stated below, the Court concludes that the bond proceedings denied Liborio Ramos her right to due process, and orders the government either to conduct a bond hearing that comports with due process, or to release her.

**I. BACKGROUND**

Liborio Ramos is a 38-year-old woman who came to the United States when she was 18 years old. She has three minor children, ages 11, 13, and 17, all of whom are United States citizens. Her youngest child, a daughter, has special needs. ECF No. 7 at 6-7. In 2012, her life partner and the father of her three children was deported, and Liborio Ramos became a single mother. She worked two full-time jobs while caring for her children, including making sure her daughter received the necessary special instruction at her school and taking her to speech therapy. Id. at 7.

The stress of her circumstances made it difficult for Liborio Ramos to sleep, and she began drinking beer at night to calm her nerves and help her sleep. Eventually she became addicted to alcohol. She also became depressed, blaming herself for her daughter's difficulties and worrying about her finances. In November 2015, she pled guilty to misdemeanor driving under the influence and hit-and-run. She was sentenced to probation, community service, and a 9-month, video-based DUI education program.[1] Approximately a year later, in November 2016, Liborio Ramos again drove under the influence and pleaded guilty to misdemeanor DUI and driving with a suspended license. She was sentenced to community service and DUI education. Id. at 8; ECF No. 15-1 at 37.[2] The DUI education program she was required to attend was significantly different from, and more effective than, her first set of video classes. The second program included individual counseling and group therapy. Liborio Ramos further committed to rehabilitation by regularly attending church and involving herself in the church community, quitting her restaurant job and finding a new job where she would not be around alcohol, and remaining sober. ECF No. 7 at 8-9.

**\*2** On March 26, 2017, immigration authorities detained Liborio Ramos as she was leaving an International House of Pancakes after eating breakfast with her children. Id. at 9. When Liborio Ramos was detained, an asylum officer found that she had a reasonable fear of returning to Mexico where members of the Zetas gang had threatened to kill her and did kill members of her family on the basis of their indigenous identity. Id. at 10. When she was detained, Liborio Ramos was placed in withholding-only proceedings, due to a removal order she received at the border in 2003. See 8 U.S.C. § 1231(a)(5).[3] At her merits hearing before an IJ currently scheduled for March 14,

2018, she will seek relief in the form of withholding of removal on the basis of this reasonable fear. Id.

The Government scheduled bond hearings for Liborio Ramos on October 24, 2017 and November 8, 2017, but only held full proceedings on November 29, 2017, more than eight months after she was detained. ECF No. 7 at 11. The IJ denied Liborio Ramos's release on bond, concluding that she was such a flight risk and danger to the community that no amount of bond could secure her release. ECF No. 8-1 at 20.

Liborio Ramos then petitioned this Court for habeas corpus relief and moved for a temporary restraining order, ECF Nos. 1, 6, which request the Court now considers.

## II. JURISDICTION

"[A] federal district court has habeas jurisdiction under 28 U.S.C. § 2241 to review [ ] bond hearing determinations for constitutional claims and legal error." Singh v. Holder, 638 F.3d 1196, 1200-01 (9th Cir. 2011). "In addition, although the Attorney General's discretionary judgment ... shall not be subject to review, claims that the discretionary process itself was constitutionally flawed are cognizable in federal court on habeas...." Id. at 1202 (citations omitted). In particular, a district court has jurisdiction to review an IJ's discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional. See Sales v. Johnson, No. 16-CV-01745-EDL, ECF No. 17 at 8 (N.D. Cal. April 27, 2017) (concluding that immigrant's claims were reviewable by district court where challenged as constitutionally flawed); Obregon v. Sessions, No. 17-CV-01463-WHO, 2017 WL 1407889, at *4 (N.D. Cal. Apr. 20, 2017) (same); Castaneda v. Aitken, No. 15-CV-01635-MEJ, 2015 WL 3882755, at *7-8 (N.D. Cal. June 23, 2015) (same); Espinoza v. Aitken, No. 5:13-CV-00512 EJD, 2013 WL 1087492, at *3 (N.D. Cal. Mar. 13, 2013) (same); see also, c.f., Saravia v. Sessions, No. 17-CV-03615-VC, 2017 WL 5569838, at *2 (N.D. Cal. Nov. 20, 2017) (ordering bond hearings for unaccompanied minors previously determined not to be flight risks or dangerous but re-detained because of changed circumstances under procedural due process).

**\*3** The Government contends that the Court lacks jurisdiction to hear Liborio Ramos' petition because she failed to exhaust her administrative remedies before the Bureau of Immigration Appeals ("BIA"). First, the Government cites 8 U.S.C. § 1252(d)(1), which applies to "final order[s] of removal." The present case does not involve a final order of removal. Furthermore, the Ninth Circuit has held that 8 U.S.C. § 1252(a)(2)(B), which governs discretionary denials of relief, is not a jurisdictional bar. Hernandez v. Sessions, 872 F.3d 976, 987 (9th Cir. 2017). Rather, administrative exhaustion is a prudential, rather than jurisdictional, concern. Id. at 988–89. Where administrative remedies would be futile, a petitioner is not required to administratively exhaust. Id.

The Court concludes that Liborio Ramos has adequately demonstrated futility. She has been detained since March 2017. She finally received a bond hearing in December 2017, at which bond was denied. She contends that she was denied due process of law at that hearing. She appealed that denial to the BIA two weeks after her bond denial, but no hearing date, or even briefing schedule, has been set for her appeal. That process is expected to take four months. ECF Nos. 7 at 13, 8-1 at 9. Liborio Ramos is entitled to a bond hearing every six months; she will have been in custody for well more than a year by the time her appeal is heard; and even a successful appeal will not allow her to be out of custody in time to assist her counsel at her March 14 merits hearing. Another court in this district held in a similar case that "the potential for irreparable harm to Petitioner, in the form of continued unlawful denial of [bond] hearings for potentially four months or more," was so great that "waiver of the exhaustion requirement is appropriate." Villalta v. Sessions, No. 17-CV-05390-LHK, 2017 WL 4355182, at *3 (N.D. Cal. Oct. 2, 2017) (citations omitted); see c.f., Resendiz v. Holder, No. C 12-04850 WHA, 2012 WL 5451162, at *4 (N.D. Cal. Nov. 7, 2012) (finding no exception to prudential exhaustion requirement because immigrant did not timely file appeal with BIA nor habeas petition, for three months); Carmona v. Aitken, No. 14-CV-05321-JSC, 2015 WL 1737839, at *8 (N.D. Cal. Apr. 10, 2015) (same, as to nine months). The Court reaches the same conclusion here, and finds that Liborio Ramos's claim falls under the prudential exception of futility and that administrative exhaustion is not required.

## III. DISCUSSION

### A. Petitioner's Entitlement to a Bond Hearing

The first question is whether Liborio Ramos is entitled to a bond hearing at all. The Government argues that she is not, given that she is in withholding proceedings

under 8 U.S.C. § 1231(a)(5). ECF No. 15 at 8. As another court in this district has noted, however, "because only two provisions of § 1231(a) authorize detention—§ 1231(a)(2) (which authorizes detention during the 90-day removal period) and § 1231(a)(6) (which authorizes detention beyond the 90-day removal period) ... an alien who is detained while in "withholding-only" proceedings must be detained pursuant to either § 1231(a)(2) or § 1231(a)(6)." Villalta, 2017 WL 4355182, at *5. And the Ninth Circuit has made clear that immigrants detained under § 1231(a)(6) are entitled to bond hearings every six months. Diouf v. Napolitano, 634 F.3d 1081, 1082 (9th Cir. 2011). The Court likewise concludes that Liborio Ramos was entitled to a bond hearing because she was in withholding proceedings under § 1231(a)(5) and detained pursuant to § 1231(a)(6). [4]

**B. Whether Petitioner's Bond Violated Due Process**

*\*4* In order to continue detention, due process requires the Government to show by clear and convincing evidence that an immigrant is a flight risk or a danger to the community at the time of the bond hearing. Singh, 638 F.3d at 1208; see also Diouf 6314 F.3d 1081 (extending Singh to bond hearings for immigrants detained under § 1231(a)). To determine whether an immigrant is a flight risk or poses a danger to the community, an IJ must consider factors including: (1) whether the immigrant has a fixed address in the United States; (2) the immigrant's length of residence in the United States; (3) the immigrant's family ties in the United States, (4) the immigrant's employment history, (5) the immigrant's record of appearance in court, (6) the immigrant's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses, (7) the immigrant's history of immigration violations; (8) any attempts by the immigrant to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States. Matter of Guerra, 20 I&N Dec. 37, 40 (BIA 2006).

The clear and convincing evidence standard "is a high burden and must be demonstrated in fact." Obregon, 2017 WL 1407889, at *7; see also id. at 6 (looking to criminal bond hearings for guidance in assessing whether the government met its burden, and at the criminal court which made the underlying determination to release the immigrant). "[A]lthough an alien's criminal record is surely relevant to a bond assessment, ... criminal history

alone will not always be sufficient to justify denial of bond on the basis of dangerousness." Singh, 638 F.3d at 1206. The IJ must consider not only the seriousness of any prior criminal conduct, but whether the immigrant's circumstances have changed such that criminal conduct is now less likely. Id. at 1205 ("[T]he BIA focused on Singh's prior convictions for petty theft, receiving stolen property and substance abuse. Under a clear and convincing evidence standard, the BIA might conclude that Singh's largely nonviolent prior bad acts do not demonstrate a propensity for future dangerousness, in view of evidence showing that his drug use, which was the impetus for his previous offenses, has ceased."). To determine whether the IJ's determination complied with these standards, the Court looks closely at the information before the IJ and whether the IJ adequately considered that evidence. See Obregon, 2017 WL 1407889, at *7 ("[T]he IJ may not have adequately considered all of the available evidence in assessing petitioner's present dangerousness.").

Here, the IJ declined to release Liborio Ramos on any amount of bond because: (1) Liborio Ramos's two misdemeanor DUI convictions and failed efforts at rehabilitation after her first conviction endangered the community, and (2) Liborio Ramos was a flight risk because she told the IJ she would pursue all available legal relief if she were ordered deported. The IJ's written decision included details from police reports about Liborio Ramos's DUIs in 2015 and 2016, which indicate that she was driving unsafely. ECF No. 8-1 at 18-19. Also before the IJ was information about Liborio Ramos's 19-year history in the United States, three minor daughters, and substantial community support— as evidenced by 80 community letters and 30 attendees at her hearing, including the Bishop of San Francisco. Id. at 7. Liborio Ramos also submitted to the IJ a large amount of information evidencing her rehabilitation and continued prospects for sobriety, particularly after her second conviction. Id. This evidence showed that she would continue to receive treatment and support towards her rehabilitation, and that she has a U.S. citizen sponsor who would support her financially and emotionally upon release. Id. at 39.

While the IJ noted Liborio Ramos's testimony that she had participated in rehabilitation and intended to avoid alcohol in the future, the IJ appeared to rely largely on Liborio Ramos's convictions instead of her changed, post-conviction circumstances. Id. at 18-19. Moreover, the IJ

considered Liborio Ramos to be a flight risk because she stated she would take all available legal steps to remain in the United States if she were ordered deported. Id. at 19. While the IJ took this as an indication that Liborio Ramos would evade arrest, her counsel understood that she was explaining her intent to appeal. ECF Nos. 7 at 22, 8-1 at 9. The IJ did note that Liborio Ramos has "long resided in the US and has 3 citizen children." ECF No. 8-1 at 20.

**\*5** One court in this district granted habeas relief after an IJ denied bond for an immigrant with a significantly more severe criminal history and significantly fewer ties to the United States. Sales, No. 16-CV-01745-EDL, ECF No. 17. The immigrant had been convicted of second degree murder, and had family in the United States but no property or business here, and no evidence of community support like Liborio Ramos. Id. at 12. Nonetheless, the court reasoned that there was no evidence that he was a flight risk and the immigrant's criminal history was not extensive, so granted relief. Id. In a case analogous to the case at hand, another court in this district expressed substantial doubt that there had been clear and convincing evidence to detain an immigrant. Obregon, 2017 WL 1407889, at \*4. The petitioner had been convicted of two misdemeanor DUIs, one felony DUI, and four convictions for driving without a license. Id. The court concluded that the IJ did not rely exclusively on the immigrant's past convictions, but also on their recency, her past failure to rehabilitate, her positive change in relationship status, and her past failure to comply with bond by violating U.S law while on release. Id. at \*7. But the court noted that the IJ failed to consider evidence that the immigrant had been somewhat successful in rehabilitation, intended to return to treatment, and was in meaningfully different rehabilitation treatment after her latest DUI. Id. The petitioner wanted to, but had not been able to, testify about her rehabilitation plan if she were released. Id. at \*8. Finally, the court noted that "it was worth considering ... that the criminal courts clearly believed that petitioner was entitled to bail *before* she was detained fourteen months ago." Id. (emphasis in original). The court found it "extremely doubtful that any Magistrate Judge on this court would have remanded her to custody based on this record." The court was "skeptical" that the Government could show by clear and convincing evidence that the immigrant was a flight risk or dangerous. Id. Given that the immigrant was entitled to a six month hearing in 25 days, the court simply ordered

that the bond hearing occur within that time frame, rather than grant habeas relief. Id.

In the present case, the Court concludes that the Government did not show by clear and convincing evidence that Liborio Ramos was a danger to the community or a flight risk such that no amount of bond, or alternative supervision, could secure her release. The IJ did not appear to consider alternatives to detention such as residential treatment or alcohol monitoring, or whether any amount of bond could mitigate flight risk or dangerousness. Matter of Sanjeev Kumar Narayan, 2009 WL 2981790 (BIA, Aug. 31, 2009). Also, while Liborio Ramos was convicted of two DUIs, relatively recently in 2015 and 2016, see Castaneda, 2015 WL 3882755, at \*7-8 (finding clear and convincing evidence of dangerousness from two serious DUIs), she has also demonstrated significant changed circumstances in the form of meaningful rehabilitation as evidenced by letters from community members, her own testimony about her dedication to sobriety, and her concrete steps like changing jobs and remaining in treatment, see Obregon, 2017 WL 1407889, at \*7-8 (finding efforts towards meaningful rehabilitation to significantly weigh against clear and convincing evidence of present dangerousness). As in Obregon, the state criminal court concluded that petitioner was neither a flight risk nor a danger to the community. And unlike in Obregon, Liborio Ramos testified as to her rehabilitation plan on release including through letters from her rehabilitation counselors. ECF No. 8-1 at 61, 64. The Court also notes that the rehabilitation Liborio Ramos attended since her 2016 DUI differed meaningfully from her rehabilitation after her 2015 DUI in that it offered personal therapy, and Liborio Ramos made other significant changes like increased involvement in church, reduced access to alcohol, and actual sobriety, Id. at 20-21, which the IJ did not appear to consider, ECF No. 8-1 at 20.

Moreover, the IJ appears to have based her conclusion that petitioner was a flight risk on petitioner's statement that would pursue her legal remedies if she were ordered deported. The pursuit of legal remedies is simply not consistent with a risk of flight. Even assuming that it were, however, that evidence is outweighed by significant evidence that she is not a flight risk. Id. at 9. Liborio Ramos has lived in the country for nearly two decades, has deep family ties and significant employment history, and no record of missing court dates or evading court

orders. Matter of Guerra, 20 I&N Dec. at 40. In sum, "[i]t violates due process to keep someone in immigration detention for [nearly a] year on the basis of dangerousness where the overriding reason is that a non-violent crime was committed as a result of that person's addiction and the individual has a viable plan for rehabilitation and compliance with pertinent conditions of release." Obregon, 2017 WL 1407889, at *8.

### C. What Relief is Due

Having concluded that Liborio Ramos did not receive due process at her prior bond hearing, the question is what relief is now due. As have other courts in this district and circuit, the Court concludes that the appropriate remedy is to order that she be released unless the Government provides a new bond hearing which complies with due process within a certain amount of time. Sales, No. 16-CV-01745-EDL, ECF No. 17 at 14; Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (granting habeas in form of bond hearing); Espinoza, 2013 WL 1087492, at *3 (same); Franco-Gonzales v. Holder, 828 F. Supp. 2d 1133, 1149 (C.D. Cal. 2011) (same). But see Borjas-Calix v. Sessions, No. CV-16-685-TUC-DCB, 2017 WL 1491629, at *4 (D. Ariz. Apr. 26, 2017) (enjoining ICE from re-detaining immigrant where IJ ordered him released on bond, but BIA held he was not entitled to bond). Liborio

Ramos is ordered released unless the Government holds a bond hearing which comports with due process within fifteen days of the issuance of this order.

### CONCLUSION

*6 For the aforementioned reasons, Liborio Ramos's petition for habeas corpus is granted in part. The Government is enjoined from detaining Liborio Ramos unless they hold a bond hearing which comports with due process, where the Government shows by clear and convincing evidence that she is a flight risk or danger to the community, within fifteen days from the issuance of this order. Because the Court grants alternative relief under Liborio Ramos's petition for habeas corpus, Liborio Ramos's motion for a temporary restraining order is terminated as moot. Chen, 917 F. Supp. 2d at 1019 (terminating as moot motion for preliminary relief when court granted petition).

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2018 WL 905922

Footnotes

1   The government states that Liborio Ramos was sentenced to 15 days in custody, but its own exhibits show that she was sentenced to community service. ECF No. 15-1 at 13; see also "2022620000-Sheriff-Work Programs, San Joaquin County," located at www.sjgov.org/WorkArea/DownloadAsset.aspx?id=9406 (In the San Joaquin County Sheriff's Alternative Work Program, "[p]articipants serve two to five days per week in community service in lieu of serving time in custody.").

2   See note 1, supra.

3   If an alien who was previously removed from the United States pursuant to a removal order re-enters the United States and is subsequently apprehended, 8 U.S.C. § 1231(a)(5) allows the government to reinstate the alien's prior removal order, and the alien cannot challenge his reinstated removal order either directly or collaterally. 8 U.S.C. § 1231(a)(5) ("[T]he prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed.").

      However, if the alien expresses a fear of returning to the country of removal, and if an asylum officer finds that the alien has a "reasonable fear" of persecution, then the alien is placed in "withholding-only" proceedings before an IJ through which the alien may apply for withholding of removal. See 8 C.F.R. § 208.31. These proceedings are known as "withholding-only" proceedings because the IJ's jurisdiction is limited to consideration of whether an alien is entitled to withholding of removal only. See id, § 1202.2(c)(3)(i) ("The scope of review in [withholding-only] proceedings ... shall be limited to a determination of whether the alien is eligible for withholding or deferral of removal.").

      Villalta v. Sessions, No. 17-CV-05390-LHK, 2017 WL 4355182, at *4 (N.D. Cal. Oct. 2, 2017).

4   The Court also notes that the IJ concluded that Liborio Ramos was entitled to a bond hearing under the specific precedent cited above, and Liborio Ramos did in fact receive a bond hearing. ECF No. 9-1 at 19-20,

Ramos v. Sessions, Slip Copy (2018)

**End of Document**                          © 2018 Thomson Reuters. No claim to original U.S. Government Works.

# Attachment B

Ramos v. Sessions, --- F.Supp.3d ---- (2018)

2018 WL 1317276
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

Floricel Liborio RAMOS, Petitioner,
v.
Jefferson B. SESSIONS, et al., Respondents.

Case No. 18–cv–00413–JST
|
Signed 03/13/2018

**Synopsis**
**Background:** Alien, native of Mexico who was detained by
Department of Homeland Security pending withholding-
only proceedings, sought habeas corpus relief, alleging
that bond hearing before immigration judge violated due
process, and filed motion for temporary restraining order
and motion to enforce prior judgment which was obtained
in *Ramos v. Sessions*, 2018 WL 905922.

**Holdings:** The District Court, Jon S. Tigar, J., held that:

[1] District Court had jurisdiction over habeas petition;

[2] alien's failure to appeal bond determination to Board
of Immigration Appeals did not bar motion to enforce
judgment;

[3] immigration judge complied with District Court's prior
order; and

[4] immigration judge's finding that alien posed danger to
community was clearly erroneous.

Motion to enforce granted; motion for TRO terminated
as moot.

West Headnotes (13)

[1]     **Habeas Corpus**
        👉 Review of Different Court
        District Court had jurisdiction over habeas
        petition filed by alien, native of Mexico,

who was detained by Department of
Homeland Security pending withholding-only
proceedings; alien claimed that bond hearing,
to which she was entitled as immigrant
detained for over six months, was legally
erroneous and violated constitutional right
of due process. U.S. Const. Amend. 5;
Immigration and Nationality Act § 241, 8
U.S.C.A. § 1231(a)(6).

Cases that cite this headnote

[2]     **Habeas Corpus**
        👉 Review of Different Court
        The District Court has habeas jurisdiction
        to review bond hearing determinations by
        immigration judges for constitutional claims
        and legal error. Immigration and Nationality
        Act § 241, 8 U.S.C.A. § 1231(a)(6); 28
        U.S.C.A. § 2241.

Cases that cite this headnote

[3]     **Habeas Corpus**
        👉 Aliens
        Although    the    Attorney    General's
        discretionary judgment in detaining aliens
        shall not be subject to review, claims
        that the discretionary process itself was
        constitutionally flawed are cognizable in
        federal court on habeas review. Immigration
        and Nationality Act § 241, 8 U.S.C.A. §
        1231(a)(6); 28 U.S.C.A. § 2241.

Cases that cite this headnote

[4]     **Aliens, Immigration, and Citizenship**
        👉 Bond or bail
        **Aliens, Immigration, and Citizenship**
        👉 Judicial Review or Intervention
        The United States Supreme Court's decision
        in *Jennings v. Rodriguez*, 138 S.Ct. 830,
        neither prevents an immigration judge
        from conducting a bond hearing for
        immigrants detained under the Immigration
        and Nationality Act section providing for
        detention of inadmissible or criminal aliens
        ordered removed who pose a risk to the

community or are unlikely to comply with
the order of removal, nor deprives the
District Court of jurisdiction to review the
constitutionality of that bond determination.
Immigration and Nationality Act § 241, 8
U.S.C.A. § 1231(a)(6).

Cases that cite this headnote

**[5]**    **Aliens, Immigration, and Citizenship**
      Bond or bail

Immigrants, detained under the Immigration
and Nationality Act section providing for
detention of inadmissible or criminal aliens
ordered removed who pose a risk to the
community or are unlikely to comply with
the order of removal, remain entitled to
bond hearings every six months to determine
whether the Government showed they are a
flight risk or danger by clear and convincing
evidence. Immigration and Nationality Act §
241, 8 U.S.C.A. § 1231(a)(6).

Cases that cite this headnote

**[6]**    **Aliens, Immigration, and Citizenship**
      Judicial Review or Intervention

Fact that alien, native of Mexico
who was detained by Department of
Homeland Security pending withholding-
only proceedings, did not appeal bond
determination by immigration judge to
United States Board of Immigration Appeals
did not bar alien from moving District
Court to enforce prior court order which
required Government to release alien unless
it held bond hearing at which Government
demonstrated dangerousness or flight risk by
clear and convincing evidence. Immigration
and Nationality Act § 241, 8 U.S.C.A. §
1231(a)(6).

Cases that cite this headnote

**[7]**    **Aliens, Immigration, and Citizenship**
      Bond or bail
     **Constitutional Law**
      Arrest, detention, supervision, and parole

Due process requires the Government, in
order to justify denial of bond to a detained
alien, to show by clear and convincing
evidence that the immigrant, detained as
an inadmissible or criminal alien ordered
removed who poses a risk to the community or
is unlikely to comply with an order of removal,
is a flight risk or a danger to the community
at the time of the bond hearing. U.S. Const.
Amend. 5; Immigration and Nationality Act §
241, 8 U.S.C.A. § 1231(a)(6).

1 Cases that cite this headnote

**[8]**    **Aliens, Immigration, and Citizenship**
      Bond or bail

To determine whether an immigrant is a flight
risk or poses a danger to the community, so
as to warrant denial of bond, an immigration
judge must consider factors including: (1)
whether the immigrant has a fixed address in
the United States; (2) the immigrant's length
of residence in the United States; (3) the
immigrant's family ties in the United States,
(4) the immigrant's employment history, (5)
the immigrant's record of appearance in court,
(6) the immigrant's criminal record, including
the extensiveness of criminal activity, the
recency of such activity, and the seriousness
of the offenses, (7) the immigrant's history
of immigration violations; (8) any attempts
by the immigrant to flee prosecution or
otherwise escape from authorities; and (9) the
immigrant's manner of entry to the United
States. Immigration and Nationality Act §
241, 8 U.S.C.A. § 1231(a)(6).

Cases that cite this headnote

**[9]**    **Aliens, Immigration, and Citizenship**
      Bond or bail

Although an alien's criminal record is surely
relevant to an immigration judge's bond
assessment, criminal history alone will not
always be sufficient to justify denial of bond
on the basis of dangerousness; rather, the
recency and severity of the offenses must be

considered. Immigration and Nationality Act § 241, 8 U.S.C.A. § 1231(a)(6).

Cases that cite this headnote

[10]    **Aliens, Immigration, and Citizenship**
    ⬅ Bond or bail

The clear and convincing evidence standard, to which the Government is held in justifying denial of bond to a detained alien, is a high burden and must be demonstrated in fact. Immigration and Nationality Act § 241, 8 U.S.C.A. § 1231(a)(6).

Cases that cite this headnote

[11]    **Habeas Corpus**
    ⬅ Conclusiveness of Prior Determinations

On habeas petition challenging constitutionality of immigration bond hearing, District Court would review immigration judge's factual findings for clear error, and independently review facts, findings, and record to determine, de novo, whether those facts clearly and convincingly demonstrated that detained alien posed such danger to community that she needed to remain detained. U.S. Const. Amend. 5; Immigration and Nationality Act § 241, 8 U.S.C.A. § 1231(a)(6).

Cases that cite this headnote

[12]    **Aliens, Immigration, and Citizenship**
    ⬅ Bond or bail
**Constitutional Law**
    ⬅ Arrest, detention, supervision, and parole

Immigration judge complied with District Court's order that she, to comport with due process in bond hearing for detained alien, native of Mexico, fully consider evidence before her in determining whether Government met its burden to demonstrate by clear and convincing evidence that alien was either danger to community or flight risk; immigration judge thoroughly and specifically considered evidence of changed circumstances, including evidence that alien

engaged in counseling for alcoholism following DUI convictions, but concluded, notwithstanding, that DUI convictions constituted clear and convincing evidence of danger to community. U.S. Const. Amend. 5; Immigration and Nationality Act § 241, 8 U.S.C.A. § 1231(a)(6).

Cases that cite this headnote

[13]    **Aliens, Immigration, and Citizenship**
    ⬅ Bond or bail

Immigration judge's finding in bond hearing that detained alien, native of Mexico, posed danger to community, justifying denial of bond, was clearly erroneous; although alien had two convictions of driving under the influence of alcohol in 2015 and 2016, both crimes were misdemeanors resulting in no custodial sentence, and alien complied with conditions of probation, including attending alcohol education. Immigration and Nationality Act § 241, 8 U.S.C.A. § 1231(a)(6).

Cases that cite this headnote

**Attorneys and Law Firms**

Jehan Marie Laner, Pangea Legal Services, San Francisco, CA, for Petitioner.

Robin Michael Wall, United States Attorney's Office Northern District of California, San Francisco, CA, for Respondents.

JON S. TIGAR, United States District Judge

### ORDER GRANTING MOTION TO ENFORCE PRIOR ORDER

Re: ECF Nos. 20, 22

*1  Before the Court are Petitioner Floricel Liborio Ramos's motions for a temporary restraining order ("TRO") and to enforce this Court's prior judgment. ECF Nos. 20, 22. The court will grant the motion to enforce and

order Respondents to release Liborio Ramos immediately under appropriate conditions of supervision.

## I. BACKGROUND

Floricel Liborio Ramos came to the United States when she was 18 years old, and she has now been here for twenty years. She has three minor children, ages 11, 13, and 17, all of whom are United States citizens. ECF No. 7 at 6–7. Her youngest child has special needs. Id. In 2012, Liborio Ramos became a single mother, and worked two full-time jobs while caring for her children, including making sure her daughter received necessary special education and therapy. Id. at 7.

Liborio Ramos began drinking beer at night to deal with her stress, and she eventually became addicted to alcohol. In November 2015, she pleaded guilty to misdemeanor driving under the influence and hit-and-run. She was sentenced to probation, community service, and a nine month, video-based DUI education program. Approximately a year later, in November 2016, Liborio Ramos again drove under the influence and pleaded guilty to misdemeanor DUI and driving with a suspended license. She was sentenced to community service and DUI education. Id. at 8; ECF No. 15–1 at 37. The DUI education program she was required to attend was significantly more rigorous and effective than her first set of video classes. Unlike the first program, it included individual counseling and group therapy. Liborio Ramos further committed to rehabilitation by regularly attending church and involving herself in the church community, quitting her restaurant job and finding a new job where she would not be around alcohol, and remaining sober. ECF No. 7 at 8–9.

In March 2017, immigration authorities detained Liborio Ramos, and found that she had a reasonable fear of returning to Mexico where members of the Zetas gang had threatened to kill her and did kill members of her family on the basis of their indigenous identity. Id. at 9–10. She was placed in withholding-only proceedings, due to a removal order she received at the border in 2003. See 8 U.S.C. § 1231(a)(5). At her merits hearing before an IJ, currently scheduled for March 14, 2018, she will seek relief in the form of withholding of removal on the basis of this reasonable fear. Id.

An IJ held a bond hearing for Liborio Ramos on November 29, 2017, more than eight months after she was detained. ECF No. 7 at 11. The IJ denied Liborio Ramos's release on bond, concluding that she was a flight risk and a danger to the community, and that no amount of bond could secure her release. ECF No. 8–1 at 20. Liborio Ramos then petitioned this Court for habeas corpus relief and moved for a temporary restraining order. ECF Nos. 1, 6. The Court granted in part Liborio Ramos's habeas petition, reasoning that the IJ deprived Liborio Ramos of due process when she failed to hold the government to its burden to show by clear and convincing evidence that Liborio Ramos was a flight risk or a danger to society. ECF No. 19 ("February 15 Order"). The Court ordered the Government to release Liborio Ramos unless it held an additional bond hearing at which the Government demonstrated dangerousness or flight risk by clear and convincing evidence. Id.

**\*2** On February 22, 2018, the IJ conducted a second bond hearing. The IJ incorporated the evidence she had already received by reference; considered two pieces of additional documentary "evidence," her first bond memorandum and the February 15 Order; and took approximately one additional hour of testimony by Liborio Ramos. ECF No. 20–2 at 4. On March 2, 2018, the IJ issued a second bond memorandum denying bond. Id. In her second memorandum, the IJ recounted the details of Liborio Ramos's two DUIs as well as her rehabilitation efforts. The IJ noted that Liborio Ramos first completed a nine month DUI program, then committed a second DUI, and then began a more effective DUI program which "involved hearing people share their stories in group discussion setting." Id. at 5. However, Liborio Ramos completed only two hours and thirty minutes of her second DUI program, which the IJ found to be "meager in comparison to [Liborio Ramos's] conduct particularly in light of the fact that she had scarcely completed an entire 9–month–long DUI offender program before reoffending." Id. at 7. She acknowledged that Liborio Ramos was picked up by ICE only a month into her second DUI program, but nonetheless held Liborio Ramos's lack of continued participation against her. Id. The IJ concluded that Liborio Ramos's "testimony that she has changed and will never drink again is not worthy of belief" given the short term of her second DUI counseling and the "evidence of dangerous, recidivist drunk driving." Id. at 8. The IJ noted that Liborio Ramos presented only one witness, her DUI counselor Elizabeth Diaz, who "was unavailable for testimony when phoned by the Court," and "declined to present testimony from any

other witnesses or individuals." Id. at 7. After "thoroughly consider[ing the] documentary evidence and testimony" the IJ concluded that the Government "met its burden of demonstrating by clear and convincing evidence that [Liborio Ramos] poses a danger to the community." Id. Finally, the IJ "considered whether there is any condition of release that would ensure the public safety," but concluded there was not because Liborio Ramos "has little regard for the law," given that she was on probation at the time of her second DUI. Id. at 9.

Unlike in her first order, the IJ did not analyze whether Liborio Ramos was a flight risk, id., and the Government no longer justifies Liborio Ramos's detention on this ground.

## II. JURISDICTION

[1]  [2]  [3]  The Court earlier concluded that it had jurisdiction over Liborio Ramos's habeas petition, ECF No. 19, and now reaches the same conclusion. This Court "has habeas jurisdiction under 28 U.S.C. § 2241 to review [ ] bond hearing determinations for constitutional claims and legal error." Singh v. Holder, 638 F.3d 1196, 1200–01 (9th Cir. 2011). "[A]lthough the Attorney General's discretionary judgment...shall not be subject to review, claims that the discretionary process itself was constitutionally flawed are cognizable...." Id. at 1202 (citations omitted). This Court therefore has jurisdiction to review Liborio Ramos's claim that her bond hearing, to which she was entitled under Diouf v. Napolitano, 634 F.3d 1081 (9th Cir. 2011) as an immigrant detained for over six months under 8 U.S.C. § 1231(a)(6), was legally erroneous and unconstitutional. See Sales v. Johnson, No. 16–CV–01745–EDL, ECF No. 17 at 8 (N.D. Cal. April 27, 2017); Obregon v. Sessions, No. 17-CV-01463-WHO, 2017 WL 1407889, at *4 (N.D. Cal. Apr. 20, 2017); Castaneda v. Aitken, No. 15-CV-01635-MEJ, 2015 WL 3882755, at *7–8 (N.D. Cal. June 23, 2015); Espinoza v. Aitken, No. 5:13-CV-00512 EJD, 2013 WL 1087492, at *3 (N.D. Cal. Mar. 13, 2013).

The Government calls the Court's jurisdiction into question. It notes that shortly after the Court issued its prior order, but before the IJ issued her second bond memorandum, the Supreme Court ruled that immigrants detained under different statutory provisions, 8 U.S.C. §§ 1225(b)(1), 1225(b)(2), and 1226(c), are not entitled to bond hearings at six month intervals. Jennings v. Rodriguez, ── U.S. ──, 138 S.Ct. 830, 836, ── L.Ed.2d

── (2018). In her second bond memorandum, the IJ looked to Jennings in concluding that she "no longer has jurisdiction to conduct custody redetermination hearings for individuals...who are...detained pursuant to INA § 241(a) [8 U.S.C. § 1231(a) ]." ECF No. 20–2 at 6. The IJ reasoned that Rodriguez v. Robbins, 804 F.3d 1060, 1139 (9th Cir. 2015), which provided bond hearings for individuals detained under sections 1225(b)(1), 1225(b)(2), 1226(c), and Diouf, 634 F.3d at 1085, which provides bond hearings for individuals like Liborio Ramos detained under section 1231(a)(6), both applied the canon of constitutional avoidance. Id. Because the Supreme Court reversed Rodriguez "on the grounds that the Ninth Circuit misapplied the canon of constitutional avoidance," the IJ reasoned that Diouf "too is no longer a reliable source of jurisdiction. Id. [1]

[4]  Contrary to the Government's assertion and the IJ's conclusion, Jennings neither prevents an IJ from conducting a bond hearing for immigrants detained under section 1231(a)(6) nor deprives this Court of jurisdiction to review the constitutionality of that bond determination. First, Jennings affirmed that 8 U.S.C. § 1252(b)(9) is not a jurisdictional bar to this Court hearing habeas cases challenging the denial of bond. Section 1252(b)(9) bars judicial review of final orders of removal. 8 U.S.C. § 1252(b)(9). However, Jennings confirmed that habeas bond petitions are "not challenging the decision to detain [immigrants] in the first place or to seek removal," and accordingly the Court has jurisdiction to review this case. Jennings, 138 S.Ct. at 841.

*3  Second, Jennings reversed the Ninth Circuit's holding in Rodriguez that immigrants detained under sections 1225(b)(1), 1225(b)(2), and 1226(c) were entitled to a bond hearing every six months, but left untouched the Ninth Circuit's requirement of such hearings for immigrants detained under section 1231(a)(6). 138 S.Ct. at 836. An immigrant's detention is authorized under two different groups of statutes. First, immigrants who have not yet been ordered removed, and are either seeking asylum, deemed inadmissible, or challenging their removal order are detained under either section 1225(b)(1) (authorizing detention for immigrants deemed inadmissible, and seeking asylum until their asylum proceedings terminate), 1225(b)(2) (authorizing detention for immigrants deemed inadmissible, and seeking admission until their removal proceedings terminate), or 1226(c) (authorizing detention for immigrants in removal proceedings who are charged

with crimes or terrorist activities). Many immigrants in this first category of detention are directly challenging their removal order. Second, immigrants who have been ordered removed, either because they received a final removal order or were previously deported, and are pursuing collateral review of that removal order, pursuing withholding of removal, or cannot be repatriated to their country, are detained under section 1231(a)(6). Liborio Ramos has a final order of removal because of a prior deportation, but is seeking withholding relief, so she is detained under section 1231(a)(6).

Jennings held that immigrants detained under the first category (sections 1225(b)(1), 1225(b)(2), and 1226(c) ) are not entitled to bond hearings every six months because the Ninth Circuit erroneously applied the canon of constitutional avoidance when it held that they were entitled to such hearings. Jennings, 138 S.Ct. at 842. Jennings reached this conclusion by expressly contrasting the first statutory category immigrants detained pursuant to sections 1225 and 1226 with the second immigrants detained pursuant to section 1231(a)(6) on three grounds. First, the Supreme Court reasoned that the statutory text of sections 1225 and 1226 provides that immigrants "*shall* be detained," while section 1231(a)(6) provides that immigrants "*may* be detained." Id. at 843–44 (citing to Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), where the Supreme Court read section 1231(a)(6) to require hearings every six months because the statute provided that immigrants "may be detained"). The Supreme Court reasoned that "may" in section 1231(a)(6) suggested discretion and ambiguity which left space for constitutional avoidance, while any interpretation of "shall" to allow for release simply contradicted the statutory text. Id. Second, the Supreme Court looked to provisions in sections 1225 and 1226, which allowed for release through parole, while section 1231(a)(6) had no such provisions for release, which left negative space for an implied limitation. Id. at 844. Third, the Supreme Court reasoned that the text of sections 1225 and 1226 envision some end to detention, when asylum or removal proceedings conclude, and section 1231(a) (6) does not, because immigrants detained under section 1231(a)(6) have already exhausted their direct review. Id. at 843. This third factor arguably undercuts Liborio Ramos's contention that Jennings does not apply to her eligibility for a bond hearing, because like those in asylum proceedings under section 1225(b), her detention will end when her withholding proceedings end. However, the first

two factors show at a minimum that Jennings left for another day the question of bond hearing eligibility under section 1231(a)(6), and at best that the Ninth Circuit correctly invokes the doctrine of constitutional avoidance in such situation.

[5]  In any event, given the Supreme Court's explicit carve-out, Diouf remains good law and is binding on this Court. That case held that immigrants detained under section 1231(a)(6) are entitled to bond hearings. Diouf, 634 F.3d 1081. Moreover, even if this Court thought that Diouf were "clearly irreconcilable" with Jennings which it does not only a three-judge panel may overrule prior Ninth Circuit precedent on that ground. United States v. Robertson, 875 F.3d 1281, 1291 (9th Cir. 2017). To state the obvious, this Court is not a three-judge panel of the Ninth Circuit. Thus, the Court will continue to follow Diouf. Immigrants detained under § 1231(a)(6), such as Liborio Ramos, remain entitled to bond hearings every six months to determine whether the Government showed they are a flight risk or danger by clear and convincing evidence.

*4  The Government argues that this Court lacks jurisdiction for three additional reasons. First, the Government contends that Liborio–Ramos is not entitled to a bond hearing because she is in withholding only proceedings. ECF No. 25 at 16. The Court has already rejected this argument in the February 15 Order, and rejects it now for the same reasons. ECF No. 19 at 5. Two other courts in this district have concluded persuasively that immigrants detained under section 1231(a)(6) by reason of withholding only proceedings are entitled to the bond hearings under Diouf. Villalta v. Sessions, No. 17-CV-05390-LHK, 2017 WL 4355182, at *4 (N.D. Cal. Oct. 2, 2017); Castaneda, 2015 WL 3882755, at *3. As the court in Villalta explained, "[a]n immigrant who was previously removed (has a removal order) and reenters has no direct or collateral review available for removal, but if they express a reasonable fear of persecution, they're placed in withholding only proceedings while the IJ considers whether they are entitled to withholding of removal.... [U]nder Diouf II, an alien who is detained in 'withholding-only' proceedings pursuant to the second provision, § 1231(a)(6), is entitled to a bond hearing if the alien has been subject to prolonged detention." Villalta, 2017 WL 4355182, at *4–5.

Second, the Government contends that the clear and convincing evidence standard does not apply to bond hearings held under section 1231(a)(6). ECF No. 25 at 17–18. This court follows other courts in this district that have held that the clear and convincing evidence standard does apply. See Sales v. Johnson, No. 16-CV-01745-EDL, 2017 WL 6855827, at *5 (N.D. Cal. Sept. 20, 2017); Castaneda, 2015 WL 3882755, at *3. It is easy to understand why this standard governs section 1231(a)(6) bond determinations by examining the progression of Ninth Circuit case law on immigration bond hearings. First, the Ninth Circuit held in Casas–Castrillon v. DHS, 535 F.3d 942 (9th Cir. 2008) that immigrants detained under § 1226(a) are entitled to bond hearings. Then, the Ninth Circuit held in Diouf that immigrants detained under section 1231(a)(6) are presumptively entitled to Casas hearings when they have been detained for six months. Diouf, 634 F.3d at 1085. Finally, the Ninth Circuit explained in Singh that Casas hearings are governed by a clear and convincing evidence standard. Singh, 638 F.3d at 1200. Following the thread of these cases, it is clear that the clear and convincing evidence standard of proof applies to section 1231(a)(6) Diouf hearings, which derive from Casas hearings.

Third, the Government argues that this Court lacks jurisdiction to review discretionary bond determinations under 8 U.S.C. § 1226(e). ECF No. 25 at 19. Section 1226(e) provides that the "Attorney General's discretionary judgment regarding the application of *this section [1226]* shall not be subject to review. No court may set aside any action or decision by the Attorney General *under this section* regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e) (emphasis added). Liborio Ramos is detained under section 1231(a)(6), not section 1226, so it is not clear that this provision applies to her. In any case, as this Court concluded in its prior order, Liborio Ramos mounts a constitutional and legal challenge to the IJ's bond determination, arguing that it failed to comply with due process, and does not challenge a discretionary determination. ECF No. 19 at 3. The Ninth Circuit has made clear that a district court retains jurisdiction, notwithstanding section 1226(e), to review legal and constitutional challenges to bond determinations, which are not challenges to discretionary determinations. Singh, 638 F.3d at 1202 ("[A]lthough the Attorney General's discretionary judgment...shall not be subject to review, claims that the discretionary process itself was constitutionally flawed are cognizable in federal

court on habeas because they fit comfortably within the scope of § 2241.") (citations omitted). And most recently in Jennings, the Supreme Court concluded that section 1226(e) does not bar constitutional or legal challenges. Jennings, 138 S.Ct. at 841 ("[B]ecause the extent of the Government's detention authority is not a matter of 'discretionary judgment,'...respondent's challenge to 'the statutory framework that permits [their] detention without bail,' falls outside of the scope of § 1226(e).").

**\*5** In sum, immigrants detained under section 1231(a)(6), like Liborio Ramos, remain entitled to bond hearings whereby the Government must show their dangerousness or flight risk by clear and convincing evidence every six months, notwithstanding the Supreme Court's recent ruling in Jennings. It remains clear that the Court has jurisdiction over this case.

### III. EXHAUSTION

[6] The Government next argues that Liborio Ramos's motion should be denied because she did not administratively exhaust her claim. ECF No. 25 at 6. As this Court explained in its prior order, exhaustion is a prudential concern. ECF No. 19 at 4. The Ninth Circuit has made clear that administrative exhaustion will not deprive a court of jurisdiction to review an immigration bond determination. Hernandez v. Sessions, 872 F.3d 976, 988–89 (9th Cir. 2017).

In any case, although Liborio Ramos did not appeal the IJ's second bond decision to the BIA, she was not required to do so. Liborio Ramos filed a motion to enforce this Court's prior order, and she need not seek administrative review before filing a motion to enforce that order. Harvest v. Castro, 520 F.3d 1055 (9th Cir. 2008) (concluding that a district court has jurisdiction to enforce its prior conditional order on a petition for habeas corpus). Another court in this district concluded that an immigrant need not appeal to the BIA before filing a motion to enforce. Sales, 2017 WL 6855827, at *7 ("Respondents have cited no authority for the proposition that a litigant must exhaust administrative remedies before filing a motion to enforce a final judgment. Furthermore, Petitioner contends that there is no administrative agency process through which Mr. Sales can seek compliance with a federal court order."); see also Mau v. Chertoff, 562 F.Supp.2d 1107, 1113–14 (S.D. Cal. 2008) ("As an initial matter, the Court disagrees with Respondents' argument that Petitioner should be required

to pursue an appeal with the BIA before returning to this Court and requesting enforcement of its judgment. This request for relief relates directly to this Court's prior order and, as such, there are no administrative remedies to exhaust. It should not fall to the BIA to review Respondents' compliance with this Court's judgment."); Judulang v. Chertoff, 562 F.Supp.2d 1119, 1125 (S.D. Cal. 2008). Accordingly, the Court concludes that Liborio Ramos need not exhaust by appealing to the BIA before moving to enforce this Court's prior order, and exhaustion is no bar to this Court's review.

## IV. STANDARD OF PROOF FOR BOND

**[7]   [8]   [9]** As to what standard of proof the IJ was required to apply in her bond determination, due process requires the Government to show by clear and convincing evidence that an immigrant is a flight risk or a danger to the community at the time of the bond hearing. Singh, 638 F.3d at 1208; see also Diouf, 634 F.3d at 1081 (extending Singh to bond hearings for immigrants detained under section 1231(a)(6) ). To determine whether an immigrant is a flight risk or poses a danger to the community, an IJ must consider factors including: (1) whether the immigrant has a fixed address in the United States; (2) the immigrant's length of residence in the United States; (3) the immigrant's family ties in the United States, (4) the immigrant's employment history, (5) the immigrant's record of appearance in court, (6) the immigrant's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses, (7) the immigrant's history of immigration violations; (8) any attempts by the immigrant to flee prosecution or otherwise escape from authorities; and (9) the immigrant's manner of entry to the United States. Matter of Guerra, 20 I & N Dec. 37, 40 (BIA 2006). "Although an alien's criminal record is surely relevant to a bond assessment,...criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness. Rather, the recency and severity of the offenses must be considered." Singh, 638 F.3d at 1206. Moreover, "not every criminal record would support a finding of dangerousness. For example, some orders of removal may rest on convictions for relatively minor, non-violent offenses...." Id. The IJ must also consider whether the immigrant's circumstances have changed such that criminal conduct is now less likely. Id. at 1205 ("[T]he BIA focused on Singh's prior convictions for petty theft, receiving stolen property and substance abuse. Under a clear and convincing evidence standard, the BIA might

conclude that Singh's largely nonviolent prior bad acts do not demonstrate a propensity for future dangerousness, in view of evidence showing that his drug use, which was the impetus for his previous offenses, has ceased.").

**\*6   [10]** The clear and convincing evidence standard "is a high burden and must be demonstrated in fact." Obregon, 2017 WL 1407889, at \*7; see also id. at —— (looking to the criminal court which made the underlying determination to release the immigrant for guidance in assessing whether the Government met its burden).

## V. THIS COURT'S STANDARD OF REVIEW

The more difficult and less settled question is what standard governs this Court's review of the IJ's bond determination. In Singh, the Ninth Circuit held that the clear and convincing evidence standard applied to immigration bond determinations, that the IJ committed legal error by failing to apply that standard, and that this error was prejudicial because the case was close, there was little evidence to support the IJ's conclusion, and the little evidence was equivocal. Singh, 638 F.3d at 1205. Singh did not, however, provide clear guidance on precisely what standard of review a district court should apply in reviewing an IJ's application of the clear and convincing evidence standard of proof.

It seems clear is that a standard of review which asks only whether the IJ announced the correct legal standard is insufficient. C.f., Nat'l Res. Def. Council, Inc. v. Pritzker, 828 F.3d 1125, 1135 (9th Cir. 2016) ("An agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision."); Cole v. Holder, 659 F.3d 762, 771–72 (9th Cir. 2011) ("[W]here there is any indication that the BIA did not consider all of the evidence before it, a catchall phrase does not suffice, and the decision cannot stand. Such indications include misstating the record and failing to mention highly probative or potentially dispositive evidence."). Other courts in this district have considered whether an IJ adequately applied the clear and convincing evidence standard to bond determinations even where the IJ announced the correct standard. See Sales, 2017 WL 6855827, at \*6 (reasoning that although the IJ stated the clear and convincing evidence standard correctly, "this brief and conclusory treatment of the evidence that Petitioner is a flight risk at the June 23, 2017 hearing does not actually, or correctly, apply the clear and convincing standard"); see

also Obregon, 2017 WL 1407889 at *7 (IJ announced correct standard, but the district court went on to assess whether she correctly applied that standard); Castaneda, 2015 WL 3882755, at *3 (same). Even after reviewing these decisions, however, it is not clear what standard of review the district court applies to the IJ's determination. The parties have not identified a district court or Ninth Circuit case announcing a particular standard of review, and the Court has not uncovered one.

The Court therefore takes its cue from the standard of review an appellate court applies when reviewing a lower court's application of the clear and convincing evidence standard. See Obregon, 2017 WL 1407889, at *6 (drawing standards for immigration bond from criminal bail cases including United States v. Salerno, 481 U.S. 739, 751, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) which applied the clear and convincing evidence standard). In Singh, the Ninth Circuit concluded that the clear and convincing evidence standard from civil commitment cases should apply to immigration bond determinations, reasoning that a relatively high standard of proof must apply where a party faces a deprivation of liberty in the form of non-punitive detention. Singh, 638 F.3d at 1204 (citing Addington v. Texas, 441 U.S. 418, 427, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) and Foucha v. Louisiana, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) ). The Ninth Circuit also recognized in an immigration bond case that the same clear and convincing evidence standard applies in criminal bail cases, where the court assesses whether to release a person charged with, but not yet convicted of, a crime because they pose such a significant danger to society. Tijani v. Willis, 430 F.3d 1241, 1246 (9th Cir. 2005) (Tashima, J., concurring) (equating Addington and Salerno clear and convincing evidence standards and reasoning that the standard should govern immigration bond determinations); see also United States v. Sahhar, 917 F.2d 1197, 1205 (9th Cir. 1990) ("We see no meaningful distinction between this [civil commitment] case and Allen and Salerno."); Foucha, 504 U.S. at 81, 112 S.Ct. 1780 (drawing from Salerno to analyze civil commitment).

*7  When the Ninth Circuit reviews a district court's application of the clear and convincing evidence standard in criminal bail cases, it applies the following standard of review: "Factual findings underlying a district court's pretrial release or detention order, including whether a defendant is a flight risk or a danger to the public, are reviewed under the clearly erroneous standard, coupled with an independent review of the facts, the findings, and the record to determine whether the order may be upheld." United States v. Fidler, 419 F.3d 1026, 1029 (9th Cir. 2005)(citations omitted); see also United States v. Townsend, 897 F.2d 989, 994 (9th Cir. 1990) ("[T]he district court's factual findings in a bail hearing are to be reviewed under a deferential, clearly erroneous standard. But the conclusions based on such factual findings present a mixed question of fact and law and require the exercise of sound judgment as to the values underlying the legal principles. Accordingly, we make an independent examination of the record to determine whether the pretrial detention order is consistent with the defendant's constitutional and statutory rights and arrive at our conclusion de novo"). But see Sahhar 917 F.2d at 1208 (applying the habeas sufficiency of the evidence standard to review civil commitment where a defendant challenged his civil commitment as a violation of due process "because the government failed to produce evidence to justify his commitment") (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ); but see also c.f., United States v. Chischilly, 30 F.3d 1144, 1150 (9th Cir. 1994) (describing the standard of review for incompetence findings as "clear error"); United States v. Koenig, 912 F.2d 1190, 1192 (9th Cir. 1990) (describing the standard of review for a district court's review of a magistrate judge's bail determination as "de novo...without deference to the magistrate's factual finding").

This independent review of the findings and record allow a reviewing court to ensure that an immigrant receives the constitutional process to which she is due. United States v. Motamedi, 767 F.2d 1403, 1405 (9th Cir. 1985) ("[I]n reviewing a district court's order denying pretrial release [under the clear and convincing evidence standard], we must ensure not only that the factual findings support the conclusion reached, but also that the person's constitutional and statutory rights have been respected."). For example, a reviewing court might ask whether the IJ meaningfully engaged with the record in making her findings, or instead ignored crucial evidence. The Court also notes that any review of an agency determination, including in the immigration context, should incorporate some deference to the agency, particularly on factual or credibility determinations, and on the application of the agency's own laws and regulations. Zadvydas, 533 US at 701, 121 S.Ct. 2491 (reasoning that a habeas court can and

should in a general sense defer to executive authority). The standard of review the Court has outlined incorporates some deference. Moreover, this case involves a review of whether the agency complied with constitutional due process, rather than with its own regulations or laws.

The Court also finds support for this standard of review from other district courts in this district and circuit. Without announcing any particular standard of review, other courts in this district and circuit appeared to follow a similar standard in reviewing IJ's bond determinations. For example, courts have indicated some deference to an IJ's factual determinations, particularly of credibility. See Singh v. Holder, No. C 09-03012 JSW, 2010 WL 702246, at *4 (N.D. Cal. Feb. 25, 2010) ("[T]he IJ's credibility findings based on cross-examination relating to witness testimony are squarely within the province of the IJ's exercise of discretion."); see also Manzanarez v. Holder, No. CIV. 13-00354 SOM, 2013 WL 5607167, at *2 (D. Haw. Oct. 11, 2013) (describing no review over "discretionary judgment, such as the weighing of facts and the credibility of witnesses in a bond hearing") (citing Singh, 638 F.3d at 1202). After applying some factual deference, however, courts have generally reweighed the IJ's factual findings, to determine whether the facts as legitimately found add up to clear and convincing evidence of dangerousness or flight risk. See, e.g., Obregon, 2017 WL 1407889, at *7 (concluding that "the IJ may not have adequately considered all of the available evidence in assessing petitioner's present dangerousness," by comparing the written memorandum to the evidence presented, and noting that the IJ gave "little attention" to the immigrant's plan for rehabilitation and "other measures to justify that the least restrictive alternative was not further incarceration"); Sales, No. 16–cv–1745–EDL, ECF No. 17 at 14 (granting habeas because "based on th[e] record, the government's evidence did not establish clearly and convincingly that Petitioner was a poor bail risk," and reviewing the facts before the IJ, and how the IJ assessed those facts, including whether the IJ focused on or ignored certain Guerra factors, and the main reason the IJ denied bond); Castaneda, 2015 WL 3882755, at *8 ("Considering this evidence as a whole, the IJ was within his discretionary authority in concluding that the government had shown, by clear and convincing evidence, that Petitioner was a danger to the community."). In sum, a review of other district courts suggests that these courts informally apply a standard similar to the standard of review described above.

*8 [11] Absent clear guidance on the standard of review which governs this Court's review of the IJ's decision, and bolstered by similar standards of review applied by district courts in similar cases, this Court concludes that a standard of review similar to criminal bail determinations should apply. The Court accordingly reviews the IJ's factual findings for clear error, and independently reviews the facts, findings, and record to determine, de novo, whether these facts clearly and convincingly demonstrate that Liborio Ramos poses such a danger to the community that she must remain detained, including because no alternative to detention could protect the community. Townsend, 897 F.2d at 994.

## VI. ANALYSIS OF THE MERITS

In its previous order, the Court concluded that the IJ legally erred because she did not fully consider the evidence before her in determining whether the Government had met its burden to demonstrate by clear and convincing evidence that Liborio Ramos was either a danger to the community or a flight risk. ECF No. 19. The Court noted there that the IJ focused on Liborio Ramos's past crimes despite that she "demonstrated significant changed circumstances in the form of meaningful rehabilitation as evidenced by letters from community members, her own testimony about her dedication to sobriety, and her concrete steps like changing jobs and remaining in treatment," and by entering DUI therapy which "differed meaningfully" from her earlier therapy. Id. at 8–9. The Court also reasoned that the IJ "did not appear to consider alternatives to detention such as residential treatment or alcohol monitoring, or whether any amount of bond could mitigate ...dangerousness." Id. at 8. The Court did not hold that the Government had not met its burden as a matter of law, but rather that the record did not show that the IJ had adequately considered the full record before her. See, e.g., id. at 9 ("The Court also notes that the rehabilitation Liborio Ramos attended since her 2016 DUI differed meaningfully from her rehabilitation after her 2015 DUI in that it offered personal therapy, and Liborio Ramos made other significant changes like increased involvement in church, reduced access to alcohol, and actual sobriety, Id. at 20–21, *which the IJ did not appear to consider*." (emphasis added) (citation omitted) ). The Court enjoined the Government "from detaining Liborio Ramos unless they hold a bond hearing which comports with due process, where the Government

Ramos v. Sessions, --- F.Supp.3d ---- (2018)

shows by clear and convincing evidence that she is a flight risk or danger to the community." Id. at 10. Because the IJ has now held a second bond hearing, the issues in this case are (1) whether the IJ complied with this Court's directive to consider the entire record in making her bond determination, and (2) whether the IJ legally erred in concluding that the Government had shown that Liborio Ramos poses a danger to the community. Accordingly, the Court now reviews the IJ's findings of fact for clear error, and then independently reviews those facts in light of the entire record to determine whether those facts show clear and convincing evidence of dangerousness. Townsend, 897 F.2d at 994.

Before resolving those two questions, the Court must address a threshold argument made by Liborio Ramos. She argues that given the Court's prior order, "the Government would have had to present some additional evidence at Liborio Ramos's's" second bond hearing, which it did not do. ECF No. 21 at 13. "In other words, the IJ considered the same record that was before this Court...when this Court found that the Government had not met its burden." ECF No. 21 at 16. She argues that because the Government did not present such evidence, it failed to meet its burden as a matter of law. Id.

**\*9** If the argument is meant to invite the Court to adopt a rule that the Government must always present additional evidence at a later bond hearing to sustain an earlier finding of dangerousness or flight, the Court declines the invitation. Certainly, the longer an immigrant is detained, the more robust the procedural protections governing their detention should be. Zadvydas, 533 U.S. at 701, 121 S.Ct. 2491 (recognizing that "as the period of prior postremoval confinement grows, detention grows less reasonable); see also Diouf, 634 F.3d at 1091. Furthermore, because the IJ must consider "the recency and severity of [any past] offenses," Singh, 638 F.3d at 1206, evidence of criminal conduct grows less powerful as it becomes less current. Thus, the passage of time is undeniably relevant and the IJ must consider it. But that does not mean that criminal conviction evidence inevitably loses its persuasive force. See Obregon, 2017 WL 1407889 at \*8 (holding that the Government is not required as a matter of law to present new evidence of dangerousness at a subsequent bond hearing). Thus, the Court will address the question of the adequacy of the evidence on the merits.

**[12]** Turning now to that inquiry, and the initial question of whether the IJ gave full consideration to the evidence before her, the Court can easily resolve that question in the Government's favor. The IJ's March 2, 2018 decision shows that she much more thoroughly considered or more thoroughly demonstrated that she had considered whether the Government had shown by clear and convincing evidence that Liborio Ramos was a danger to the community. She also carefully engaged with Liborio Ramos's evidence of changed circumstances. For example, she noted Liborio Ramos's plan to contact her DUI counselor if she were tempted to drink in the future, but noted that the counselor was unavailable when phoned by the Court. ECF No. 20–2 at 7. She noted the significant differences between Liborio Ramos's video classes after her first DUI and the group and one-on-one counseling sessions following her second DUI, but reasoned that the short amount of time Liborio Ramos spent in this second program (because she was picked up by ICE) was "meager in comparison to" her conduct. Id. at 7. And the IJ explained that she focused so heavily on the police reports of Liborio Ramos's arrest because Liborio Ramos "largely failed to provide her own testimony about the circumstances of her offenses." Id. Moreover, the IJ concluded that Liborio Ramos's "testimony that she has changed and will never drink again is not worthy of belief," including because she failed to corroborate testimony such as the reason she left her restaurant job. ECF No. 20–2 at 8. The IJ noted that she "thoroughly considered" Liborio Ramos's evidence and testimony but concluded that the Government met its burden of showing she was a danger to the community by clear and convincing evidence including because her two DUI's "were both relatively recent and undoubtedly serious." Id. [2] Thus, the IJ complied with this Court's directive that she consider the entirety of the evidence before her.

**[13]** The next question is whether the IJ clearly erred in finding the facts. With two exceptions, the answer is that she did not. The majority of the facts she found are supported in the record. The first exception is her finding which she repeated from her first order that Liborio Ramos "was sentenced to 15 days in jail but testified that she served no jail time." ECF No. 20–2 at 5. In fact, the record shows that Liborio Ramos was correct. In its February 15 order, this Court admonished that the Government's "own exhibits show that [Liborio Ramos] was sentenced to community service." ECF No. 19 at 2 n. 1 (citing ECF No. 15–1 at 13). When an

IJ's bond memorandum indicated "that he misunderstood some of the evidence presented," the court in Obregon explained, this "mistake may have caused the IJ to overestimate the severity" of the petitioner's past conduct, which "demonstrates that the IJ may not have adequately considered all of the available evidence in assessing petitioner's present dangerousness." Obregon, 2017 WL 1407889, at *7. Once again, the same is true here. A 15–day custodial sentence, which the petitioner appears to deny having served, appears much more severe than the actual 15 days of community service which Liborio Ramos did serve. [3] Moreover, this mistake not only caused the IJ to adopt an inflated view of the seriousness of Liborio Ramos's criminal conduct, it also likely contributed to her finding that Liborio Ramos was not credible.

**\*10**  The second clear error was the IJ's implicit determination that Liborio Ramos was not actively engaged in her rehabilitation because she failed to complete the alcohol education course required as a result of her second DUI. Liborio Ramos did not voluntarily stop attending that class. In fact, the only reason Liborio Ramos stopped is that she was picked up by ICE. [4] To now allow DHS to detain Liborio Ramos because its own agents prevented her from finishing her DUI classes has no justification in the record or common sense.

But for these factual findings, however, the Court adopts the facts as found by the IJ. Having adopted those facts, the Court must then "make an independent examination of the record to determine whether the pretrial detention order is consistent with the defendant's constitutional and statutory rights and arrive at [its own] conclusion *de novo*." Townsend, 897 F.2d at 994. Having performed that duty, the Court finds that these facts in the aggregate do not meet the Government's burden of demonstrating by clear and convincing evidence that Liborio Ramos poses a danger to the community.

The IJ's decision not to release Liborio Ramos rests firmly on Liborio Ramos's two DUI convictions and the circumstances of those offenses. ECF No. 25–1 at 86 ("The particular circumstances of Respondent's DUIs are also of importance here."). As already noted, while an immigrant's criminal history is relevant, "criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness. Rather, the recency and severity of the offenses must be considered." Singh, 638 F.3d at 1206. Here, the offenses at issue consist of two

misdemeanors for which Liborio Ramos was never given a custodial sentence.

In determining whether that history is sufficient to uphold a finding of dangerousness by clear and convincing evidence, it is instructive to examine other immigration detention cases from courts in this circuit. In Mau, 562 F.Supp.2d at 1116, the IJ found that a petitioner who had been detained for three years posed a danger to the community based on three DUI convictions that were four to six years old two misdemeanor convictions and one felony conviction. Id. at 1118. That court found that petitioner's "past DUI convictions, while serious, cannot independently justify his continued indefinite detention, especially in light of the fact that the detention period (which has surpassed three years) has nearly doubled the 16 month penalty Petitioner received for that crime." Id. The district court concluded that "[u]nder the circumstances, the IJ's reliance on [these] convictions...as the basis for the finding of present dangerousness was an error of law." Id. In Judulang, 562 F.Supp.2d at 1127, the IJ found that a man who had been in immigration custody for five years was a present danger based on a twenty-year-old conviction for voluntary manslaughter, a seven-year-old conviction for DUI, and a five-year-old conviction for theft. Id. The court reasoned that "[w]here Petitioner's only relevant conviction for violence is nearly 20 years old and no other evidence was put forward, the IJ's finding of present dangerousness was an error of law and the denial of bond was inappropriate." Id. These cases are similar to Liborio Ramos's. While the convictions in Mau were slightly more remote in time, they also were more severe there were three convictions, not two, and one was a felony. Similarly, while the convictions in Judulang were more remote, they were much more serious.

**\*11**  In Hernandez v. Lynch, "the IJ looked at several factors including Petitioner's criminal record" and "focused on Petitioner's three DUI convictions from 2001, 2004, and 2012." Hernandez v. Lynch, No. 15-CV-1717-WQH-BGS, 2016 WL 3406157, at *3 (S.D. Cal. June 20, 2016). Petitioner had been taken into custody in 2013, and his hearing before the IJ took place in 2015. The district court upheld the IJ's findings of dangerousness and flight risk. In that case, however, there was an additional, nearly continuous criminal history. "The IJ also noted that Petitioner had several other convictions, including receiving stolen property in 1991, taking a vehicle without the owner's consent, prostitution in 2004, theft, and a

failure to appear on the theft charge in 2005." Id. at *3. The criminal history in Hernandez was substantially more serious than Liborio Ramos's. [5]

Consideration of this authority and the record as a whole compels the conclusion that the Government has not met its burden of demonstrating dangerousness by clear and convincing evidence. "Case law demonstrates that establishing dangerousness by 'clear and convincing evidence' is a high burden and must be demonstrated in fact, not 'in theory.' " Obregon, 2017 WL 1407889 at *7 (citing United States v. Patriarca, 948 F.2d 789, 792 (1st Cir. 1991) ). Both of the crimes at issue were misdemeanors. The sentencing judges who were aware of the facts declined to impose *any* custodial time. At the time she was picked up by ICE, Liborio Ramos was complying with her conditions of probation, including attending the alcohol education designed to assist her in overcoming her addition. She put in place additional resources to support her recovery. When Liborio Ramos was picked up by ICE as she and her family were attempting to leave an IHOP after breakfast, Liborio Ramos was not in the driver's seat her daughter was. ECF 8–1 at 61. It has now been approximately 16 months since Liborio Ramos's most recent offense. Also, as in Mau, this court considers the maximum penalty that could have been imposed for Liborio Ramos's crimes, because that fact complements the analysis of the "recency and severity of the offenses" required by Singh, 638 F.3d at 1206. In a few days, Liborio Ramos will have been in custody for more than a year—i.e., more than the longest sentence she could have served for her second DUI. In short, two non-violent misdemeanors in which no one was injured, in light of the other facts in this record, simply do not justify indefinite detention. Without question, her driving was erratic, and her blood alcohol was high. The crimes were relatively close in time. But "when it comes to non-violent crimes, especially those caused by addiction, the passage of time does make a difference, as does the availability of treatment options." Obregon, 2017 WL 1407889 at *8. [6] The IJ overemphasized the seriousness of Liborio Ramos's crimes and, as previously explained, gave unduly short shrift to her rehabilitation efforts.

**\*12** The Court also finds that the IJ once again failed to adequately consider whether alternatives to detention could protect the community from any continued dangerousness Liborio Ramos might pose. The IJ stated that she "considered whether there is any condition

of release that would ensure the public safety," but concluded that no such condition existed because a "condition of release is only as reliable as the person upon whom the condition is imposed [and Liborio Ramos] apparently has little regard for the law." ECF No. 20–2 at 9. While the IJ noted that Liborio Ramos was on probation at the time of her second DUI and lacked a driver's license at the time of both incidents, id., her impression was likely also colored by her erroneous statement that Liborio Ramos served a custodial sentence and then lied about it to the IJ, see supra. Moreover, there was nothing about Liborio Ramos' conduct since her second DUI that showed an inability to follow the law. If anything, the evidence was to the contrary: Liborio Ramos was complying with the conditions of her probation and, as previously noted, when Liborio Ramos was picked up by ICE, her daughter was in the driver's seat, not Liborio Ramos. In light of this evidence, there are many alternatives to detention that might have been sufficient to protect the community from whatever danger Liborio Ramos posed alcohol education and counseling programs (such as the one Liborio Ramos was enrolled in when she was picked up), an ignition interlock device [7], ankle monitors, and mandatory check ins, to name some of them. See Obregon, 2017 WL 1407889, at *7 (critiquing the "little attention" given to whether "the least restrictive alternative was not further incarceration"); Sales, 2017 WL 6855827, at *7 (ordering immigrant released on conditions "such as an ankle monitor and reporting requirements").

## CONCLUSION

For the aforementioned reasons, Liborio Ramos's motion to enforce is GRANTED. The Court orders Respondents to release Liborio Ramos immediately under appropriate conditions of supervision, such as an ankle monitor and reporting requirements. Because the Court grants alternative relief under Liborio Ramos's motion to enforce, Liborio Ramos's motion for a temporary restraining order is terminated as moot. Chen v. Aitken, 917 F.Supp.2d 1013, 1019 (N.D. Cal. 2013) (terminating as moot motion for preliminary relief when court granted petition).

**IT IS SO ORDERED.**

Ramos v. Sessions, --- F.Supp.3d ---- (2018)

**All Citations**

--- F.Supp.3d ----, 2018 WL 1317276

**Footnotes**

1    The IJ noted that this Court "has not yet been afforded an opportunity to address the jurisdictional issue in light of Jennings." ECF No. 20–2 at 6.

2    As already noted, the IJ abandoned her conclusion that Liborio Ramos was a flight risk, which this Court criticized in its prior order. ECF No. 19 at 9; ECF No. 20–2 at 9. The IJ found that it was unnecessary to reach the issue.

3    Liborio Ramos also argues that the IJ failed to "fully explain her reasons for disbelieving" Liborio Ramos's changed circumstances. ECF No. 21 at 14. Petitioner's argument to this point is a nonstarter. Liborio Ramos cites asylum cases in which the Ninth Circuit examined whether an IJ provided an immigrant notice and an opportunity to provide corroborating evidence where the IJ made an adverse credibility determination. ECF No. 21 at 15 (citing Bhattari v. Lynch, 835 F.3d 1037, 1042 (9th Cir. 2016) ). However, in the bond determination context, this Court cannot reweigh the IJ's determination of Petitioner's credibility. Singh, 2010 WL 702204, at *4 ("[T]he IJ's credibility findings based on cross-examination relating to witness testimony are squarely within the province of the IJ's exercise of discretion."); see also Manzanarez, 2013 WL 5607167, at *2 (describing no review over "discretionary judgment, such as the weighing of facts and the credibility of witnesses in a bond hearing") (citing Singh, 638 F.3d at 1202).

4    When she was able to do so, Liborio Ramos even continued her alcohol counseling and rehabilitation while she was in detention, at least until ICE transferred her away from the facility which offered those courses. ECF No. 8–1 at 61.

5    There are cases with facts more similar to Liborio Ramos's that uphold detention. See Gomez–Ochoa v. Lynch, No. CV1601646PHXJJTBSB, 2017 WL 913597, at *9 (D. Ariz. Feb. 8, 2017), report and recommendation adopted, No. CV1601646PHXJJTBSB, 2017 WL 897777 (D. Ariz. Mar. 7, 2017); Castaneda, 2015 WL 3882755. These cases are not reconcilable with the cases mentioned in the body of the order. The Court has carefully considered these cases and does not find their analysis persuasive.

6    Liborio Ramos also contends that the IJ's bond memorandum shows that she improperly placed the burden of introducing new evidence on Liborio Ramos. Id. While the IJ did state more than once that she had "invited" Liborio Ramos to present additional witnesses or evidence and that Liborio Ramos had "declined" to do so, ECF No. 20–2 at 4, 7, but made no similar comments about the Government, it is clear that the IJ placed the burden where it belonged. Singh, 638 F.3d at 1200 (requiring the Government, not the immigrant to show dangerousness by clear and convincing evidence). She concluded that the Government "met its burden of demonstrating by clear and convincing evidence that [Liborio Ramos] poses a danger to the community." Id. at 8.

7    See Cal. Veh. Code § 23575. In neither of Liborio Ramos's DUIs did the court require her to install an ignition interlock. ECF No. 15–1 at 13, 37.