UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA ORTEGA-RANGEL,<br>    Plaintiff,<br>v.<br>JEFFERSON B. SESSIONS, et al.,<br>    Defendants. | Case No. 18-cv-01618-JSC<br><br>**ORDER RE PETITION FOR WRIT OF HABEAS CORPUS**<br>Re: Dkt. No. 1 |

Plaintiff Maria Ortega Rangel is a citizen of Mexico who has been residing in the United States for 18 years. In January 2018, Ms. Ortega had her first encounter with law enforcement after a valid search of her home resulted in the seizure of heroin. Ms. Ortega admitted she had knowledge of the controlled substance but stated it belonged to her partner who was not home at the time of the search. Upon release from state custody Ms. Ortega was detained by Immigration and Customs Enforcement ("ICE"). Now pending before the Court is Ms. Ortega's petition for writ of habeas corpus. Having carefully reviewed the parties' initial and supplemental briefing and having had the benefit of oral argument on April 17, 2018, the Court GRANTS Ms. Ortega's petition for the reasons set forth below.

**FACTUAL BACKGROUND**

Ms. Ortega is a 51-year old woman from Mexico. (Dkt. No. 6-1 at 5.) In 2000 she entered the United States without lawful admission near Nogales, Arizona. (*Id*. at 7.) She has a nine-year old daughter who is a U.S. citizen and two adult sons who were born in Mexico. (Dkt. No. 8-1 ¶ 3.; 6-1 at 7.) On January 23, 2018, Alameda County detectives executed a search warrant of Ms. Ortega's home. (Dkt. No. 1-2 at 32.) During the search "a large quantity of suspected heroin" was located "inside a paper bag inside the bottom [of] [a] dresser drawer." (*Id*.) The dresser was

"easily accessible and did not have any type of locking device attached to prohibit access inside it." (*Id*.) According to the Alameda County Sheriff's Office, "the quantity of suspected heroin located inside of Ms. Ortega's residence exceed[ed] the amount commonly possessed for personal use drug users." (*Id*.)

Ms. Ortega admitted the bedroom was hers and provided "an admonished statement admitting to knowing about the suspected heroin and that it belonged to her husband who was not on scene at the time the search warrant was executed." (*Id*.) Ms. Ortega's bedroom door had a deadlock but she admitted it was always left unlocked. (*Id*.) Mr. Ortega was placed under arrest and transported to Santa Rita jail based on "the large quantity of suspected heroin" in the bedroom, "her admitted knowledge of the suspected heroin," and "the children who live at the residence and their ease of accessibility to the suspected heroin." (*Id*.)

On February 6, 2018, Ms. Ortega was charged with possession for sale of a controlled substance, willful cruelty to a child, and two sentencing enhancements due to the quantity of the controlled substance. (*Id*. at 36.) Ms. Ortega was then released from criminal custody on her own recognizance by order of an Alameda County Superior Court judge and ordered to reappear on February 8, 2018. (*Id*. at 34.) That same day, February 6, 2018, Ms. Ortega was arrested by ICE upon her release from Santa Rita County jail. (Dkt. No. 6-1 at 1 ¶ 2.) Ms. Ortega was "deemed to fall within ICE's enforcement priorities" due to her "pending felony criminal charges." (*Id*. at 2 ¶ 3.)

On February 7, 2018, "ICE initiated removal proceedings because [Ms. Ortega] is unlawfully present in the United States without being inspected, admitted or paroled in violation of section 212(a)(6)(A(i) of the Immigration and Nationality Act." (*Id*. at 2 ¶ 4.) ICE determined Ms. Ortega should be detained pursuant to Section 236(a) of the INA "pending removal proceedings" and notified Ms. Ortega that she had "a right to request a review of that determination by an Immigration Judge ('IJ')." (*Id*. at 2 ¶ 5.) Ms. Ortega requested a review of the determination. (*Id*.) The following day, February 8, 2018, Ms. Ortega was unable to appear for the preliminary hearing in her criminal case because she was in ICE custody. (Dkt. No. 1-2 at 39-40.) As a result, a bench warrant for her arrest was issued and held. (*Id*. at 40.)

Approximately one month later, on March 2, 2018, an IJ conducted Ms. Ortega's bond hearing. (Dkt. No. 6-1 at 2 ¶ 7.) Ms. Ortega was "advised by her criminal attorney not to testify about the facts of her pending criminal case outside of the presence of her criminal defense attorney." (Dkt. No. 1-2 at 6 ¶ 12.) While Ms. Ortega was not able to testify about the criminal matter she was prepared to testify about other facts regarding her life in the United States. (*Id*. ¶ 13.) Ms. Ortega's daughter was also present and prepared to testify and be cross-examined. (*Id*.) Understanding that Ms. Ortega could not testify due to her pending criminal matter, the IJ stated "instead of testimony let us…get some of the saline facts." (Dkt. No. 2 at 7:79-80.) Ms. Ortega's counsel represented that Ms. Ortega (1) has never been arrested and has no criminal convictions, (2) has been in the country 18 years, (3) entered the United States without inspection, (4) has been living in Oakland, CA over the last 9 years, (5) is a widow and has not remarried, (6) has been living with her partner who is a co-defendant in the criminal matter, the father of the nine-year old, and "verbally abusive and mistreats her," (7) has two sons who have no status, but one son is married to a U.S. citizen and they have started the process of legalization, (8) participated in a program that provides microloans to women in poor communities to help them start businesses, (9) sells tamales, (10) has had no contact with immigration authorities since her entry, and (11) has never failed to appear for any civil or criminal proceeding. (Dkt. No. 2 at 7-10.)

Ms. Ortega intended to seek cancellation of removal given she had a qualifying relative, her U.S. citizen daughter, and has been in the United States for over 10 years continuously. (*Id*. at 10:185-188.) Ms. Ortega's counsel further represented that Ms. Ortega is the primary caretaker of her daughter and her removal would result in "an exceptional and unusual hardship." (*Id*. at 10:191-192.) In regards to the child endangerment charges, Ms. Ortega submitted a probable cause declaration which showed "no allegation of physical or verbal abuse against any child and the charges simply arose from the fact the child lived in a house where controlled substances were allegedly found." (Dkt. No. 1-2 ¶ 15.) Ms. Ortega's counsel also informed the IJ that pursuant to California Government Code 7282.5, the Alameda County Sherriff's Office was prohibited from handing custody of Ms. Ortega over to ICE and that it violated this law when it cooperated with ICE. (Dkt. No. 2 at 10:194-197.)

Ms. Ortega asked to be released on her own recognizance in light of the fact she had already been granted this relief by the Superior Court, or alternatively sought a $2000 bond, which would cause a substantial hardship on Ms. Ortega's family but given a recent tax return was an amount she was prepared to pay. (*Id*. at 10:191-212.) Ms. Ortega does not drive, does not own a car, and does not own any other property. (*Id*. at 10:213-215.) The primary way Ms. Ortega spends her time is taking care of her daughter and staying at home making tamales to sell to her friends' co-workers and her son's boss. (*Id*. at 10:215-218.)

The IJ determined at the hearing that Ms. Ortega was not a flight risk but requested that counsel provide oral argument on whether Ms. Ortega was a danger to the community. (*Id*. at 10:224-11:231.) Ms. Ortega's counsel stated that "we considered…putting [Ms. Ortega's daughter] on the stand to talk about how much time she spends with her mother…that her mother is there when she wakes up…and when she goes to sleep…" but that Ms. Ortega's counsel did not "want to particularly traumatize her any more than she's been traumatized." (*Id*. at 11:234-239.) To that, the IJ responded "tell us…what was in the declaration." (*Id*. at 11:240-242.) Ms. Ortega's counsel stated there is a concern regarding the child's safety since her mother is not there to care for and protect her, particularly in regards to the child's healthcare and schooling. (*Id*. at 11:247-250.) The daughter was kept away from school because of a concern that her father may try to take her out of school. (*Id*. at 11:252-257.) Further, the locks were changed after the child's father disappeared, displacing the child from her home. (*Id*. at 11:191-192.) One week after Ms. Ortega's bond hearing, her partner was arrested and taken into criminal custody in Alameda County. (Dkt. No. 1-2 at 8 ¶ 19.) The child is now is living with Ms. Ortega's older son and wife. (Dkt. No. 1-2 ¶ 20.)

The IJ issued a written order on March 5, 2018. (Dkt. No. 6-1 at 21-22.) The IJ held that Ms. Ortega "carries the burden of demonstrating: (1) she is not a danger to the community, and (2) she is not a flight risk." (*Id*. at 21.) Citing *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006), the IJ further held that "there is no limitation on the discretionary factors that an Immigration Judge may consider when ruling on custody and bond issues." (*Id*. at 21-22.) Thereafter the IJ concluded:

> Based on the totality of evidence of record, the court finds the respondent a danger to the community. She has been recently arrested for possession for sale of a controlled substance. The dangers that selling controlled substances cause a community, and society in general, cannot be easily overstated. The Board has long recognized the dangers associated with the sale and distribution of drugs. See *Matter of Melo*, 21 I&N Dec. 883, 886 (BIA 1997) (noting that the scourge on society of illegal drug trafficking and the associated criminal activity it generates is, at this point, beyond dispute); see also, *Mahini v. I.N.S.*, 779 F.2d 1419, 1421 (9th Cir. 1986) ("the Board has continually found convictions for drug possession and trafficking to be particularly serious, and the offenders a danger to the community"). The danger is especially clear here in that the respondent lives with a young child.

(*Id.* at 22.) The IJ determined that Ms. Ortega failed to establish she was not a danger to the community and denied her request for bond. (*Id.*)

After Ms. Ortega's bond hearing the IJ went back on the record to conduct Ms. Ortega's removal proceeding; however, because Ms. Ortega had not been given notice and Ms. Ortega's counsel was not prepared to go forward Ms. Ortega asked for more time. (Dkt. No. 1-2 at 8 ¶ 22.) Ms. Ortega's next removal proceeding was scheduled for March 28, 2018. (*Id.*) That hearing was postponed to April 11, 2018 after Ms. Ortega's continuance was granted. (Dkt. No 6-1 at 2 ¶ 9.) According to the Government, ICE has not received any requests to transfer Ms. Ortega to her criminal proceedings. (*Id.* at 3 ¶ 10.) The Government represents that "if such a request were received, ICE will make diligent efforts to accommodate this type of request provided it was received sufficiently in advance of the criminal hearing, does not pose a security risk, and does not inadvertently delay the removal proceedings." (*Id.*)

**PROCEDURAL HISTORY**

Ms. Ortega filed her petition for writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2243 on March 14, 2018. (Dkt. No. 1.) Thereafter the Court issued an order to show cause as to why the petition should not be granted. (Dkt. No. 4.) The Government responded on April 11, 2018. (Dkt. No. 6.) Ms. Ortega filed a traverse on April 13, 2018. (Dkt. No. 8.) The Court held oral argument on April 17, 2018. At that hearing the Court expressed concern regarding its jurisdiction over the matter. Petitioner requested the opportunity to submit supplemental briefing on that issue, which the Court granted. The Court ordered Petitioner to submit her brief by April

24, 2018 and Respondent to reply by May 1, 2018. (Dkt. No. 9.) Supplemental briefing is now complete.

Ms. Ortega has also filed a bond appeal with the BIA which is currently pending. (Dkt. No. 6-1 at 2 ¶ 8.) Both parties' briefs were due to the BIA on April 23, 2018. (Dkt No. 6-1 at 26.)

## DISCUSSION

Ms. Ortega argues that the IJ's reliance on her arrest to detain her violated due process. The Government responds that (1) the Court lacks jurisdiction to review the IJ's discretionary decision to deny bond, (2) even if the Court finds jurisdiction Ms. Ortega has not exhausted administrative remedies, and (3) Ms. Ortega's petition does not state a due process violation.

**1.     Jurisdiction**

The Immigration and Nationality Act ("INA") authorizes the detention of aliens awaiting removal from the United States. Different sections of the INA govern different phases of detention. It authorizes "the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)" and "aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 138 S. Ct. 830, 838 (2018). The section at issue here is 1226(a).[1]

"Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien pending a decision on whether the alien is to be removed from the United States." *Id*. at 837 (internal quotations omitted). "Except as provided in subsection (c) of this section, the Attorney General may release an alien detained under § 1226(a) on bond ... or conditional parole." *Id*. (internal quotations omitted).

To determine whether an immigrant who is detained under Section 1226(a) presents a flight risk or danger to the community immigration judges look to the factors set forth in *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). *Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2010). In that decision the BIA instructed that "an alien in removal proceedings has no constitutional

---

[1] Section 1226(c) only applies to immigrants who fall "into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 138 S.Ct. at 837. Ms. Ortega has not been found guilty of any offense.

6

right to release on bond." *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006*)*. "The courts have consistently recognized that the Attorney General has extremely broad discretion in deciding whether or not to release an alien on bond." *Id*. "The burden is on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond." *Id*. "In general, an Immigration Judge must consider whether an alien who seeks a change in custody status is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Id*.

"Immigration Judges may look to a number of factors in determining whether an alien merits release from bond, as well as the amount of bond that is appropriate." *Id*.

> These factors may include any or all of the following: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id*. "An Immigration Judge has broad discretion in deciding the factors that he or she may consider in custody redeterminations." *Id*. "The Immigration Judge may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Id*.

"Section 1226(e) precludes an alien from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." *Jennings*, 138 S.Ct. at 841 (internal quotations omitted). It states:

> "The Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." § 1226(e).

However, Section 1226(e) "does not preclude challenges to the statutory framework that permits the alien's detention without bail." *Jennings*, 138 S.Ct. at 841. Nor does it limit "habeas jurisdiction over constitutional claims or questions of law." *Singh*, 638 F.3d at 1202; *see also*

*Demore v. Kim*, 538 U.S. 510, 517 (2003) (concluding "Section 1226(e) contains no explicit provision barring habeas review" and the statute's "clear text" does not bar constitutional challenges to legislation authorizing detention without bail). "[C]laims that the discretionary process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of §2241." *Singh*, 638 F.3d at 1202 (internal quotations omitted) (citing *Gutierrez-Chavez v. INS*, 298 F.3d 824, 829 (9th Cir. 2002)); *see also Hernandez v. Sessions*, 872 F.3d 976, 986, 988 (9th Cir. 2017) (concluding the plaintiffs presented a claim that the discretionary process itself was constitutionally flawed because they did not challenge the amount of their initial bonds as excessive but rather the government's bond setting policies and practices as violating the Fifth Amendment).

The Court has jurisdiction over Ms. Ortega's petition. The IJ concluded Ms. Ortega is a danger to the community solely because Ms. Ortega was "recently arrested for possession for sale of a controlled substance." Ms. Ortega claims that relying on the arrest alone violated due process because no court or even grand jury has determined that there is probable cause to believe she engaged in the sale of drugs and there is no other evidence in the record to support such a finding. The Alameda County Sherriff's probable cause determination contains no admission from Ms. Ortega as to the sale of drugs; instead, Ms. Ortega stated the drugs belonged to her partner, who is now in state custody. Further, Ms. Ortega was detained by ICE two days before her preliminary hearing in state court; therefore, there has not been a state court probable cause decision to support the charges upon which the IJ based his conclusion.

Respondent argues Section 1226(e) precludes this Court's jurisdiction over the petition because "disagreement with an IJ's discretionary weighing of the evidence cannot, in and of itself, constitute constitutional or legal error." (Dkt. No. 12 at 2.) But Ms. Ortega is not challenging the IJ's weighing of the evidence; she contends it violates due process to rely solely on an arrest to find a danger to the community when there is no probable cause determination by a court or grand jury and no other evidence in the record to support a finding that she committed the crime for which she was arrested.

*Ramos v. Sessions*, 293 F.Supp.3d 1021 (N.D. Cal. Mar. 13, 2018) ("Ramos II"), decided after *Jennings*, 138 S.Ct. 830, is consistent with the Court's jurisdiction conclusion. While the district court concluded it was not clear whether Section 1226 applied these because the petitioner was detained under 8 U.S.C. § 1231, the court went on to hold that even if section 1226(e) did apply, "[t]he Ninth Circuit has made clear that a district court retains jurisdiction, notwithstanding section 1226(e), to review legal and constitutional challenges to bond determinations, which are not challenges to discretionary determinations." *Id.* at *6 (citing *Singh*, 638 F.3d at 1202). Ms. Ortega makes such a challenge here.

The Government next argues that *Singh* does not apply because the petitioner in *Singh* attacked the discretionary process itself whereas here Ms. Ortega attacks only the outcome. (Dkt. No. 12 at 4.) The petitioner in *Singh* argued (1) the IJ did not properly allocate the burden of proof, (2) the government should be held to a "clear and convincing standard of proof," (3) the government must provide contemporaneous records of *Casas* hearings, and (4) the IJ improperly admitted certain evidence. *Singh*, 638 F.3d at 1203-1209. Here, Ms. Ortega also attacks the discretionary process itself by arguing that the IJ's finding that Ms. Ortega is a danger to the community based solely on a single untested charge that was not supported by any evidence in the record was unconstitutional and legal error. If Ms. Ortega was actually convicted of selling drugs, or admitted to such conduct, or if a grand jury or judge had found probable cause to believe she had committed such a crime, or if there was other probative and specific evidence to support such a conclusion, then Ms. Ortega's challenge might be an "attack on the outcome" as the Government contends. But none of those circumstances is present in this record.

Accordingly, Section 1226(e) does not preclude this Court's jurisdiction to review Ms. Ortega's habeas petition.

**2. Exhaustion**

The Government next argues that even if the Court finds jurisdiction, Ms. Ortega's petition should be denied because she has not exhausted administrative remedies.

"Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). "If exhaustion is statutory, it may be a mandatory

9

requirement that is jurisdictional." *Id.* (referencing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 747 (9th Cir. 1991)). "If, however, exhaustion is a prudential requirement, a court has discretion to waive the requirement." *Id.* (citing *Stratman v. Watt,* 656 F.2d 1321, 1325–26 (9th Cir. 1981)).

"District Courts are authorized by 28 U.S.C § 2241 to consider petitions for habeas corpus." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001). "That section does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Id.* However, the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Id.* Specifically, "courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted).

Once a detainee receives a bond hearing before an IJ she may appeal the IJ's decision to the BIA. *Leonardo v. Crawford*, 646 F.3d 1157, 1159 (9th Cir. 2011). If the detainee disagrees with the BIA's decision she may "file a habeas petition in the district court" to challenge her continued detention. *Id.* Thereafter, "the district court's decision on the habeas petition may be appealed" to the Ninth Circuit. *Id.* Thus, pursuing habeas review of the IJ's adverse bond determination before appealing to the BIA is improper. *Id.* at 1160. "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Id.* at 1160.

Courts may nonetheless waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *SEC v. G.C. George Sec., Inc.*, 637 F.2d

10

685, 688 (9th Cir. 1981)); *see also Leonardo*, 646 F.3d at 1160 (explaining that a detainee cannot pursue habeas relief in the district court until the BIA has rendered its decision, unless the detainee can demonstrate grounds for excusing the exhaustion requirement).

Ms. Ortega must show that at least one of the *Laing* factors applies in order to excuse exhaustion. She has done so here by demonstrating irreparable harm. She has been detained since February 2018. She received a bond hearing one month later at which bond was denied. She filed a BIA appeal that has not yet been set for hearing and asserts that the BIA appeal may take four months or more to adjudicate. Given that she has lived in the United States for 18 years, she has no criminal record (other than the single arrest upon which the IJ based the detention order), that she has a pending criminal case that her ICE detention renders more difficult to defend, and that she is the primary caregiver for her 9-year old child, Ms. Ortega (and her child) will be irreparably harmed by further delay in providing her with a detention proceeding that comports with due process. Other courts in this district have held that "the potential for irreparable harm to Petitioner, in the form of continued unlawful denial of [bond] hearings for potentially four months or more," was so great that "waiver of the exhaustion requirement is appropriate." *See, e.g., Villalta v. Sessions*, No. 17-CV-05390-LHK, 2017 WL 4355182, at *3 (N.D. Cal. Oct. 2, 2017); *Cortez v. Sessions*, No. 18-cv-01014-DMR, 2018 WL 1510187, at *3 (N.D. Cal. Mar. 27, 2018); *Ramos v. Sessions ("Ramos I")*, No. 18-cv-00413-JST, 2018 WL 905922, at *3 (N.D. Cal. Feb. 15, 2018). Accordingly, the court concludes that administrative exhaustion is not required.

The Government's insistence that Ms. Ortega's failure to exhaust administrative remedies is governed by *Leonardo* is unpersuasive. While the petitioner in *Leonardo* failed to appeal the IJ's decision to the BIA before filing his petition in district court, the Ninth Circuit concluded the petitioner failed to exhaust administrative remedies not only because he did not file an appeal with the BIA but also because he did not demonstrate "grounds for excusing the exhaustion requirement." *Id*. at 1160-1161. Here, unlike *Leonardo*, Ms. Ortega has demonstrated that irreparable harm warrants the excuse of administrative exhaustion.

Accordingly, Ms. Ortega is excused from exhaustion.

11

### 3. **Due Process Violation**

The IJ's decision violated due process. The IJ concluded Ms. Ortega is a danger to the community solely because she was *arrested* for possession for sale of a controlled substance. The IJ then went on to opine that the dangers to a community from the selling of controlled substances cannot be overstated. (Dkt. No. 1-2 at 14.) Thus, the IJ's dangerousness conclusion rested on his finding that she had sold drugs. The record, however, did not contain sufficient evidence to support such a finding. While Ms. Ortega had been arrested for selling drugs, no court or grand jury had determined that there is probable cause to believe she in fact had done so. And the Alameda County Sheriff's Office's Declaration does not include facts that support a finding that she sold drugs as opposed to a finding of Ms. Ortega being aware that her boyfriend at the time sold drugs.

The two cases the IJ cited to support his decision concern individuals who were *convicted* of drug trafficking. *See Matter of Melo*, 21 I & N 883, 886 (BIA 1997) (concluding Melo was a danger to society because of his prior criminal record including his 1987 and 1989 drug-trafficking convictions, Melo admitted he sold cocaine, and served eight years for his convictions); *Mahini v. I.N.S.*, 779 F.2d 1419, 1421 (9th Cir. 1986) (concluding the BIA did not err when it concluded petitioner was a danger to the community due to his convictions for the distribution of heroin). Here, not only has Ms. Ortega not been convicted, the evidence in the record is insufficient to support a finding that she did sell drugs. Further, the Ninth Circuit has held that criminal history *alone* can be insufficient to justify detention, particularly when "a conviction could have occurred years ago, and the alien could well have led an entirely law-abiding life since then." *See Singh*, 638 F.3d at 1206. Again, Ms. Ortega has *no* criminal convictions and even no arrests for the 18 years she has lived in the United States, other than the single arrest upon which the IJ based the detention decision.

The Government's reliance on *Barrientos v. ICE Field Office Director*, 667 Fed.Appx. 184 (9th Cir. 2016) to support the IJ's decision is unpersuasive. In *Barrientos*, the Ninth Circuit held that under *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006), the IJ was permitted to consider pending criminal charges, provided the evidence of the charges was "probative and specific." *Id*.

at 184. The charged conduct there—an incident involving driving under the influence of alcohol, a hit and run, and sexual abuse of a 17-year old female—was probative and specific because the petitioner had admitted that he fled the scene of the car accident and that the female involved was a minor. Further, the petitioner had two previous convictions. *Barrientos v. Ice Field Office Director*, No. C15-982-RSL-JPD, 2015 WL 6554522, at *2 (W.D. WA Sept. 25, 2015). Ms. Ortega has not admitted to selling drugs, does not have a history of criminal convictions, and the declaration to support her arrest does not contain facts that show that she sold drugs. The fact of her arrest is not "probative and specific" and therefore the IJ's sole reliance on her arrest to detain her violated due process.

The Court cautions it is not holding that an IJ can never rely on criminal charges that are still pending to find that a detainee poses a danger to the community. The IJ may do so if the evidence supporting the charge is probative and specific. *Matter of Guerra*, 24 I. & N. Dec. at 40. In *Matter of Guerra*, for example, there was "specific and detailed" evidence in a criminal complaint of the detainee's alleged involvement in a drug trafficking scheme. *Id.* at 41. This evidence included the source of the information that the detainee was involved in drugs, the events leading to the detainee's arrest, "including locations, alleged accomplices, and other details." *Id.* The evidence here, in contrast, is not that Ms. Ortega was involved in a drug trafficking scheme, as the IJ found, but rather that she was aware that her boyfriend was selling drugs, a boyfriend that is currently in custody. It thus violated due process for the IJ to find that she posed a danger to the community because she was engaged in the sale of drugs.

**CONCLUSION**

For the reasons described above, Ms. Ortega's petition for habeas relief is GRANTED. The appropriate relief is a new bond hearing before an immigration judge that complies with due process. The hearing must be held within fifteen days from the issuance of this order.

This Order disposes of Docket No. 1.

**IT IS SO ORDERED.**

Dated: May 14, 2018

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge